## The Metropolitan National Bank
## v.
## James W. Race.

*Negotiable Instruments—Note — Guaranty — Defenses — Banks—Pay-- ment of Checks Irregularly Signed—Credit Therefor.*

The guarantor of a promissory note given to a bank can not defend in an action against him on the same by the bank, on the ground that the maker, a corporation which had been a depositor of plaintiff, had funds in the bank sufficient to pay the note, where the only basis for such claim is that the bank had credited itself with certain checks, paid by it, but which were irregularly signed, the same having been made and used by the officers of the corporation in its business and for its benefit, and where some months had elapsed since the payment of the checks (the bank book of the depositor having been several times balanced) and the bank had received no notice of dissatisfaction until the bringing of suit.

[Opinion filed November 23, 1889.]

Appeal from the Circuit Court of Macon County; the Hon. C. B. Smith, Judge, presiding.

Messrs. Smith & Pence, for appellant.

Messrs. George W. Plummer and I. D. Walker, for appellee.

Wall, J.   This was an action of assumpsit by the appellant against the appellee upon a guarantee of a promissory note as follows:

"$3,500.                              Chicago, Sept. 1, 1887.

"Ninety days after date we promise to pay to the order of ourselves thirty-five hundred dollars at Metropolitan National Bank.   Value received.

                    "Race, Porter & Company,
                              "By L. L. Race, Treas.

"Pay to the Metropolitan National Bank.
                    "Race, Porter & Co.   .
                              "By L. L. Race, Treas.

"We hereby guarantee the payment of the within note.

"Signed:      J. W. RACE,

"CHARLES H. POTTER.

"One thousand dollars hereon, Dec. 5, 1887."

Race, Porter & Company was a corporation of which the stockholders were James W. Race (appellee), Lewis L. Race, T. D. Porter, Wm. L. Johnson and Charles H. Potter. Appellee was the president, T. D. Porter, vice-president and manager, Lewis L. Race was secretary and William L. Johnson was treasurer.

This organization continued up to May 19, 1887, when Porter and Johnson resigned their respective positions and Lewis L. Race was made treasurer.   The defense to the action is based upon the theory that the appellant, holder of the note, had in its hands money belonging to Race, Porter & Co. as a depositor, sufficient to pay the balance due upon the note, and this theory is based upon the proposition that the bank had improperly paid certain checks and charged the amount thereof to Race, Porter & Company.   It appears that when Race, Porter & Company opened its account with the bank, it gave instructions to pay no checks unless signed by Johnson as treasurer and countersigned by Lewis L. Race as secretary, and that this was pursuant to a by-law of the corporation which required all checks to be so drawn.   The appellee, James W. Race, lived at Decatur and spent but a small part of his time in Chicago, where the corporation of Race, Porter & Company carried on business.

Seven checks signed by Johnson as treasurer and countersigned by Porter were drawn between May 14th and 17th, 1887, amounting in the aggregate to $2,742.83.   They were drawn while L. L. Race, the secretary, was absent from the city, and were paid by the appellant bank, but not until after certain representations had been made to the cashier, which satisfied him of the propriety of paying them although they were not countersigned by the secretary.   The note in suit was given in renewal of a former note for the same amount, being for money loaned by the bank to Race, Porter & Company.   The pass book was written up the 20th of May, 15th of

June, 8th of August and 13th of September, at which times all checks were returned.   On the 5th of December $1,000 was paid on the note and it seems that about or not long before that date, the corporation retired from business and the books and papers of the concern were sent to the appellee at Decatur, where he was engaged in mercantile business in his own name.

Although the disputed checks had been in the hands of Race, Porter & Co. from the 20th of May, appellee claims that the fact of their being drawn irregularly, without the signature of Lewis L. Race, the secretary, was not known by him until some time in December, when the discovery was made by his bookkeeper.   He also testified that the corporation got no benefit from these checks.   On the contrary, it appears very clearly as to the checks payable to Newell Bros. Mfg. Co. and Leroy Paine, the indebtedness of the corporation was discharged to the amount of $1,030.33.   The same is true also as to the check for $62.50 payable to currency, which was for the salary of one of the officers of the corporation.

It appears quite satisfactorily that another check of $850, which was the first of the deposited ones, was fully covered by the check of Chin & Co. for $750 and cash $100, so that the corporation lost nothing thereby, the transaction being merely an accommodation to Chin & Co.   The remaining three checks for $500, $100 and $200, respectively, were payable to " Currency " and according to the testimony of Johnson, and of Preston, the cashier, they were also accommodation or " swap " checks for the benefit of Chin & Co. and were covered by the check of Chin & Co., so that as to these the corporation lost nothing.

Although the appellee swore as already stated that as to these disputed checks the corporation got nothing, yet he was evidently giving his opinion merely, and according to the record he was in error as to this.   It appears from Johnson's evidence that when he left the corporation the books were balanced and his account as cashier was found correct.   This is not disputed, and although the cash books of the corporation

Metropolitan National Bank v. Race.

are copied into the record, our attention is not called to anything tending to disprove his statement in this respect. The stubs of these checks are not produced nor does it appear from any reference to or analysis of the bank accounts or of the corporation accounts that any money was paid out on the four last mentioned checks that was not covered or balanced in the manner stated. It follows that, as to these which aggregated $1,650, the position of appellee that there was so much money remaining in the bank to the credit of Race, Porter & Company, which the bank might properly apply on the note, is not well taken. Is it so as to the three checks first mentioned which went to pay the indebtedness of the corporation? That the money drawn on them was so applied can not be doubted, but counsel for appellee say the bank has no right to pay the indebtedness of the corporation without its authority, and invoke the familiar principle that one man can not, by his voluntary act, make himself the creditor of another. The principle has no just application to the facts. The checks were not drawn in exact conformity with the well understood instructions, but they were drawn by officers of the corporation who were at the time in sole charge of its business, and though irregular in form, were for a business purpose within the scope of the corporate affairs, for the liquidation of corporate liability, and the benefit of the transaction in each instance was enjoyed by the corporation. Such enjoyment was doubtless a conscious enjoyment, for we find nothing tending to show that the corporation made any effort to again pay the debts thus discharged, or that, in the slightest degree, it ever repudiated the transaction. It must be presumed that it ratified and approved what it thus enjoyed, for it can not be supposed that in the ordinary course of business it was ignorant of the facts.

Take the principal item, the debts due to Newell Bros. Mfg. Co. for $942.93; how can it be believed that the fact that it was paid was unknown, or that it was unknown that it was paid by this irregular check? So of the other two—one for $87.40 to Leroy Paine, one for $62.50 to currency. It is a very convincing, if not conclusive circumstance, that although

all these controverted checks were in the possession of the corporation from and after May 20th, no objection ever came to the notice of the bank until after this suit was brought.

Johnson testifies that the appellee saw and examined these checks at the time Johnson retired, and Preston, the cashier stated that he informed appellee about the 19th or 20th of May, that the bank had paid some checks countersigned by Porter, and that appellee made no objection, but as this is contradicted we lay it aside. Nor is it necessary to refer in detail to some other matters of evidence which are vigorously discussed in the briefs.

What has been stated will present the controlling facts in the case, and upon a full consideration of them, we are constrained to hold that the finding of the Circuit Court, a jury being waived, for the appellee, was erroneous, and so plainly so as to require a reversal at our hands.

We are, of course, not unmindful of the rules which are applicable in reference to the weight to be given to the verdict of a jury, or to the finding of a court where a jury is waived, and were this a case where the evidence is conflicting, merely, upon controverted points, we should not, of course, interfere; but in the view we take there is substantially no conflict as to the vital features of the case to which we have alluded.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*