310        KENTUCKY REPORTS.    [Vol. 136.

Ellis v. W. Nat. Bank, &c.—W. Nat. Bank v. Lou. Trust Co., &c.

CASE 35.—ACTION BY HUGH ELLIS AND THE LOUISVILLE
        TRUST CO., RECEIVER OF THE PEOPLE'S LIFE
        &  ACCIDENT  INSURANCE  CO.,  AGAINST  THE
        WESTERN NATIONAL BANK, NOW CONTINENTAL
        NATIONAL BANK.—January 19, 1910.

## Ellis v. Western National Bank, &c.
## Western National Bank v. Louisville Trust Co., &c.

Appeal from  Jefferson  Circuit  Court  (Chancery
Branch, First Division).

SHACKELFORD MILLER, Judge.

From a judgment against the bank it appeals, and
from an order striking from the petition the name
of Ellis as plaintiff and awarding costs against him
he brings a cross appeal.—Affirmed.

1.  Banks and Banking—Payment of Check Improperly Signed—
    Liability of Bank.—A bank which had agreed with an insur-
    ance company having a deposit with it, that the company's
    checks should be honored only when signed by its president,
    and countersigned by another officer, as required by its by-
    laws, to the knowledge of the bank, having attempted to pay
    to itself money from the deposit on a check signed only by
    the company's president, was liable to the company's receiver
    therefor; and was not entitled to retain it, notwithstanding the
    check was improperly drawn on the theory that it was used'
    to pay a debt for which the company was liable; it being
    used to pay a note given to the bank, not by the company, but
    by individual promoters thereof, for a loan which they turned
    over to the company, to enable it to comply with the law re-
    quiring it to have a certain amount of cash on hand, over and
    above any liability, before it can do business.

2.  Costs—Allowance.—Where   the   receiver   of   a  com-
    pany, the officers of which had abandoned it entirely to him,
    refused to sue a bank on a claim the company had against it,
    and a creditor of the company brought the action in behalf
    of all its creditors, and afterwards the receiver was made
    plaintiff, and the name of the creditor was stricken from the

petition as a party plaintiff, it was error in doing so to award costs against him, judgment having finally been rendered against the bank; and the creditor having under the circumstances had a right to sue.

THUM & ROY for plaintiffs.

FLEXNER & CAMPBELL and ROBERT G. GORDON for defendant.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On August 11, 1905, the People's Life & Accident Insurance Company was organized, and began writing insurance on the assessment plan. It did not prosper, and in a short time after its organization was placed in the hands of the Louisville Trust Company and one Megrew as receivers. Megrew died, and the Louisville Trust Company continued to act as receiver. During its existence, two death claims were presented against it, for $1,000 and $1,100 respectively; and in addition to these claims it owed debts amounting in the aggregate to a sum largely in excess of its total assets. All of its available assets were converted into cash and distributed among the creditors, and, after this had been done, there were remaining due and unpaid debts amounting to something like $8,000. After said company went into the hands of the receiver, its officers and directors ceased to take any interest in its business, and, in fact, abandoned it entirely to the receiver.

Among the assets which were alleged to belong to the company was an open account in the Western National Bank, which claimed to owe the company a balance of $1.29. Hugh Ellis, a creditor of the insolvent insurance company, insisted that this showing on the part of the bank did not represent the true

balance which it owed to the insurance company, but that, as a matter of fact, said company had on deposit in said bank the sum of $1,001.29; that, although the president of the insurance company had attempted to withdraw $1,000 of its funds from said bank and pay off and satisfy a note for $1,000, which had been executed to said bank by Reed and Brannon, two of the promoters of said insurance company; the check under which this fund was attempted to be withdrawn from the bank was not properly signed and countersigned by the officers of the insurance company, and hence the insurance company was not properly chargeable with this check. He demanded of the receiver that he proceed against the bank to recover this $1,000, for the benefit of the creditors of the insurance company. The receiver, doubting his right to subject this $1,000 to the debts of the insurance company, declined to proceed against the bank for same. Thereupon said Ellis instituted a suit in the Jefferson circuit court, wherein he set up the facts and asked that the bank be required to pay this money to the creditors of the insurance company, and asked that he be permitted to sue for and on behalf of all such. Some of the larger creditors and the receiver were made parties defendant to this suit. The receiver answered, and, without pleading to the merits of the claim, simply stated that it doubted its right to proceed and had declined for this reason. The bank answered, and not only denied liability, but specially challenged plaintiff's right to sue. Upon the issue thus joined proof was taken and the cause submitted for judgment.

The chancellor held that the claim set up and asserted by the plaintiff Ellis was one which should properly have been asserted by the receiver, and the

parties were thereupon rearranged by proper, and appropriate pleading, and the Louisville Trust Company, receiver of the People's Life & Accident Insurance Company, was made a party plaintiff, and filed a supplemental and amended petition, in which it set out practically the same state of facts as had been set up by the plaintiff in his petition and its amendment, and also pleaded that the name of the defendant, the Western National Bank, had by law been changed to the Continental National Bank, and asked that the suit proceed against the said bank in its changed name. Thereupon the defendant bank moved the court to enter an order dismissing absolutely the petition of the plaintiffs, with judgment for costs. This motion was overruled. A motion was then entered by said bank to strike from plaintiff's petition the name of Hugh Ellis as a party plaintiff, and this motion, over the objection of the plaintiff Ellis, was sustained and his name was stricken from the petition as a party plaintiff. Of this action the plaintiff Ellis complains, and from the court's ruling in dismissing the petition as to him and giving judgment for costs against him, he prosecutes a cross-appeal. Therefore, the cause proceeded regularly, and, upon full consideration, the chancellor found and adjudged that the $1,000, which the insurance company through its president had attempted to pay to said bank in satisfaction of the debt above referred to, was the property of said insurance company, and the check by which it was attempted to be drawn from said bank was not the check of said insurance company, by reason of the fact that it had not been signed by the proper officers of the company so as to warrant and justify the bank in paying the money

thereon.    From this finding and judgment of the court, the bank appeals.

The evidence in this case has taken quite a wide scope, but the real issue is a comparatively narrow one, being confined to the question as to whether or not the check upon which the bank undertook to withdraw $1,000 from the account of said insurance company was so drawn that it could properly be held to be the act of said insurance company.

It appears from the record that in order for the insurance company to receive the sanction of the insurance department to commence business, it was necessary that it have on hand a certain amount of cash, and, as the company did not have this necessary amount of money, an arrangement was made with the bank by J. V. Reed and Stuart E. Brannon, two of the promoters of said company, by which they executed their joint note to the bank for $1,000, the net proceeds of which was placed to the credit of the insurance company, and this sum, supplemented by the amount of the discount, made up the $1,000 which the president of the insurance company attempted to pay by the check out of which this litigation grows.

The by-laws of the insurance company provide that all checks on the deposit of said company should be signed by the president and countersigned by one of two other designated officers.  The bank was advised of the existence of this by-law, and, in fact, had entered into an agreement with the insurance company that the checks were to be honored only when so drawn, signed, and countersigned.  Under this arrangement, 37 checks were drawn by the insurance company and honored by the bank.  The check which is the subject of this litigation was number 38, and it was signed by the president of the insurance com-

pany alone, and was made payable to the bank for the purpose of paying off and satisfying the Reed and Brannon note. When presented to the bank it was honored, and the note was paid. At the time this check was drawn, the other officers of the insurance company, whose duty it was to countersign it, refused to do so. The fact that it was not signed and countersigned as all the other checks had been was of itself, in the absence of any special contract and arrangement in regard to the signing of these checks, sufficient to have put the bank upon notice that this check was not such authority as would warrant it in paying out the funds of the insurance company thereon. But here we have a positive agreement between the bank and the insurance company that the checks were only to be honored when signed by the president and countersigned by one of the other officers of the insurance company, hence, no check which failed to measure up to these requirements as to the signatures of the officers of the insurance company could bind the insurance company or protect the bank against loss if paid by it.

The note in question was not the debt of the insurance company. It is true that certain of the promoters of said company had borrowed this money on their individual indorsements for the company to enable it to begin business, but the name of the insurance company did not appear upon the note which was executed to raise this money, for if it had it would have left the company in no better position than it was (toward complying with the requirements of the law) before the note was executed, for the law required that it have so much cash on hand over and above any liability.

As between the insurance company and the bank, the insurance company was not liable for the payment of this debt, and the suggestion that, even though the check was not properly drawn, the bank should nevertheless be permitted to retain the fund because it had been used to pay the debt for which the insurance company was liable, has no application here. The bank has contracted with the insurance company that the funds of the latter should be withdrawn from the former only upon checks signed and countersigned in a certain particular way. The check in question not being so drawn, the bank was without authority to charge the account of the insurance company therewith. The bank was no more authorized to charge this account with this $1,000 check, signed by the president of the insurance company alone, than it would have been to charge the account of the insurance company with the checks drawn by the president thereof in his individual capacity. And when it paid out the money on this unauthorized check, it paid out, not the money of the insurance company, but money belonging to the bank. This being true, the chancellor properly held that it was answerable to the receiver for the benefit of the creditors of the insurance company for the full amount thereof.

An attempt is made to show that an arrangement had been made between the president of the bank and the president of the insurance company whereby this fund, which had been so borrowed for the benefit of the insurance company, was to remain in the bank and not be checked out for any other purpose than the payment of the Reed note. If such an arrangement had been made between the president of the bank and the president of the insurance company, it

would not have been binding upon either, and such an arrangement would certainly not be upheld where the interests of creditors, not parties to nor acquainted with such secret arrangement, had intervened. But a consideration of this question is obviated, for the reason that the record does not show that the bank ever entered into such an arrangement or understanding; but, on the contrary, it shows that, at the time such an arrangement is alleged to have been made, Smith was no longer president of the bank, and hence in no wise qualified or competent to speak for or represent it.

On plaintiff's cross-appeal, only the question of his costs is involved, for the judgment of the chancellor subjecting this $1,000 to the payment of the debts of the insurance company secured to him the full relief sought in his suit, and he is now complaining of the action of the chancellor in striking his name from the petition, upon the sole ground that it subjects him to the payment of costs, when the judgment shows that it was upon his initiative and through his efforts that the assigned estate had been benefited to the extent of this recovery. It is clear from the pleadings that the receiver was unwilling to proceed against the bank for this money, and, had it not been for the plaintiff's efforts, nothing on this account would have been recovered for the creditors. As a matter of equity and right, the plaintiff should have been given the judgment for his costs, either against the bank or the receiver.

A suit must be brought in the name of the real party in interest. Where the real party in interest refuses to proceed, we see no reason why those beneficially interested may not do so. The owner of this money was the insurance company. It had been

abandoned by its officers and directors, and its affairs were under the immediate management and control of an officer of the court. This officer was refusing to attempt to collect this money. Its refusal would have resulted in a loss to the creditors of the insurance company, the only persons who were in fact interested in its recovery. Under such circumstances to have denied to a creditor the right to sue for it would have been to defeat the ends of substantial justice.

The question is simplified when viewed from another standpoint. Suppose that, when the plaintiff demanded of the receiver that he proceed against the bank for this $1,000, and the receiver had declined to do so, the plaintiff had petitioned the court to require the receiver to proceed against the bank for this money? Upon considering such application, either in the shape of a motion or by petition for mandamus, the chancellor would have directed the receiver to proceed, and would certainly not have dismissed the plaintiff with judgment for costs against him for having made the motion or instituted the suit. Strict equity would require, in such case, that any costs incurred be borne by the receiver, if not by the defendant bank, and in no event should the plaintiff, who was entirely in the right, be made to pay the costs. As practically all costs made by the plaintiff up to the time of his removal from the suit were only such as would have been made by the receiver had he proceeded alone, the judgment in favor of the receiver for the costs of the suit satisfies all of the costs, except such as were made in an effort to have the suit dismissed as to the plaintiff, or his name stricken from the record as a party plaintiff, and as this cost was made by the defendant bank, or

on its motion, it is proper that it should be made to pay same. It is not necessary to reverse the case on plaintiff's cross-appeal in order that this may be done, but the chancellor will direct the clerk to tax all costs in this litigation against the defendant bank.

Judgment affirmed on the original and cross-appeals.