# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS
# THE CIRCUIT AND DISTRICT COURTS
# AND THE COMMERCE COURT

---

### RENDER v. ARKANSAS VALLEY TRUST CO.

#### (Circuit Court of Appeals, Eighth Circuit. April 13, 1912.)

#### No. 3,657.

1. APPEAL AND ERROR (§ 970*)—TRIAL (§ 67*)—REVIEW—DISCRETION OF COURT —REOPENING CASE.

A party cannot as a matter of right ask the court to reopen a case for further evidence, after he has rested, but such a request is addressed to the sound discretion of the court, and its ruling thereon will not be reviewed, unless a clear abuse of discretion is shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3849–3851; Dec. Dig. § 970;* Trial, Cent. Dig. § 157; Dec. Dig. § 67.*]

2. CORPORATIONS (§ 401*)—REPRESENTATION BY OFFICER—CONTRACT WITH ANOTHER CORPORATION OF WHICH HE WAS AN OFFICER—VALIDITY.

That an officer of a corporation who in its behalf, and acting within his authority, made a contract with another corporation, was also an officer of the latter, does not invalidate the contract where the interests of the two companies were not adverse, and the one for which he acted could be in no way injured by carrying out the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1363, 1364, 1595; Dec. Dig. § 401.*]

3. BILLS AND NOTES (§ 493*)—ACTIONS—DEFENSES—BURDEN OF PROOF.

Defendant, who was president of a coal company, but resided in another state, on its behalf made an arrangement that it should become a depositor in plaintiff's bank under an agreement that the bank should pay out the money only on presentation of a particular form of check or order. Being advised of an overdraft, he signed a note therefor on behalf of the company as president, and also indorsed it personally before delivery. *Held* that, in an action on the note, he was entitled to show as a defense that, in fact, the company was not indebted to plaintiff when the note was given, and that evidence that plaintiff charged to the company's account checks aggregating a large amount which were not in the form agreed on, nor signed by the officers required by the agreement, cast upon plaintiff the burden of proof to show that the money so paid out was actually applied to the use and benefit of the company.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1652–1662; Dec. Dig. § 493.*]

---

In Error to the Circuit Court of the United States for the Western District of Oklahoma.

Action at law by the Arkansas Valley Trust Company against S. P. Render. Judgment for plaintiff, and defendant brings error. Reversed.

T. G. Chambers (Flynn, Chambers & Lowe and J. D. Lydick, on the brief), for plaintiff in error.

B. F. Burwell (Read & McDonough and Burwell, Crockett & Johnson, on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. The Arkansas Valley Trust Company, hereafter called the Trust Company, brought suit against Render to recover the sum of $4,648.59, with interest, as a balance due upon a promissory note dated July 8, 1908, for the sum of $10,000, payable to the Trust Company on demand, and given by the Arkansas Valley Coal Company, Limited, hereafter called the Coal Company, and indorsed by Render before delivery under such circumstances as to make him one of the makers of the note. Render, by his answer filed in the suit, admitted that he signed the name of the Arkansas Valley Coal Company, Limited, to the note, as president of the company, and that he indorsed the same individually. He further alleged that the note was given to the Trust Company to take up overdrafts claimed by the Trust Company to have been made by the Coal Company upon its account with the Trust Company; that prior to the transaction of any business between the Trust Company and the Coal Company, about June, 1907, the Coal Company made and entered into a verbal agreement with the Trust Company, whereby the Coal Company agreed to deposit its funds with the Trust Company; that it was further agreed between the Coal Company, represented by its president, Render, and the Trust Company, represented by Gardner, its treasurer, that all drafts, checks, or orders drawn on the funds of the Coal Company in the hands of the Trust Company should be in a certain form, viz., that the check or order drawn on the Trust Company should be signed by the vice president of the Coal Company, and that there should be attached to the check a voucher or account setting forth the purpose or object for which the check was drawn, and such voucher or statement should be certified by the secretary of the Coal Company and countersigned by the treasurer of the same; that there should also be attached to said voucher or statement a receipt to be signed by the party in whose favor the check was made before the check was to be paid by the Trust Company; that the Trust Company, in violation of said agreement, paid numerous and divers checks and orders signed by the vice president of the Coal Company without the same having the voucher or statement of account above mentioned attached thereto, and without the same being certified by the secretary of the Coal Company and countersigned by the treasurer of the same; that said checks and orders, although drawn for sums of money not due and owing by the Coal Company, were paid to the amount of $39,331.12 by the Trust Company; that, by reason of

the premises, nothing was due upon the note sued upon; that Render, when he signed the note as president of the Coal Company and indorsed the same individually, supposed and believed that the sum of $10,000 for which the note was given represented moneys paid out by the Trust Company upon checks or orders drawn in accordance with the foregoing agreement.

When the case was called for trial, the court ruled that, as the issues stood upon the pleadings, the burden of proof was upon the defendant, whereupon Render was sworn as a witness and testified in his own behalf substantially as follows:

"I live at Lawton, Okl. I was a stockholder in and president of the Coal Company, which did business at Ft. Smith, Ark. In June, 1907, I made an arrangement with Mr. Gardner, treasurer of the Trust Company, whereby the Coal Company agreed to deposit its funds with the Trust Company, and the Trust Company agreed that it would pay the vouchers or checks of the Coal Company only when signed by Mr. Hickey, the vice president and general manager of the Coal Company, certified by Mr. Bedwell, secretary, and countersigned by Mr. Gardner. Mr. Gardner was also a stockholder in and treasurer of the Coal Company. Render produced and there was admitted in evidence exhibits numbered 1 to 129, being checks and orders drawn by the Coal Company in violation of the alleged agreement, and which had been paid by the Trust Company, amounting in all to $39,331.12. These checks were charged against the account of the Coal Company and became a part of the overdrafts for which the note was given. Render received statements from time to time of the amount of money drawn from the Trust Company by the Coal Company, but he did not see the vouchers or checks upon which the funds of the Coal Company were paid out until September or October, 1909, over a year after the note was given. Many of the vouchers in evidence were signed only by E. G. Hickey, vice president, and none were signed according to the agreement testified to by Render. From December 21, 1907, including a balance in favor of the Coal Company on that day of $3,921.95, there was deposited with the Trust Company by the Coal Company down to October 19, 1908, the sum of $187,771.57. Excluding the disputed vouchers, there was paid out for the Coal Company during this time by the Trust Company the sum of $148,448.11. Including the disputed vouchers there would be a credit to the Coal Company of 41 cents. If the disputed vouchers on the present record are not chargeable to the Coal Company, then there would be a balance of $39,331.53 to the credit of the Coal Company, which would more than offset the note."

After the testimony had been introduced, both sides rested, and counsel for the Trust Company moved for a directed verdict in its favor, whereupon counsel for the Coal Company asked leave to introduce testimony for the purpose of showing that Gardner was not treasurer of the Coal Company when Render made the agreement with him in regard to the form of voucher or check which the Trust Company should pay; and further asked leave, if the court was of the opinion that the burden of proof was upon Render, to show that the money paid by the Trust Company on unauthorized checks was not paid for the use and benefit of the Coal Company that the case be reopened so that this fact could be shown. The court denied the motion of counsel for Render, granted the motion of counsel for the Trust Company, and directed a verdict in its favor in the sum of $5,140.66. To the denial by the court of the motion made by counsel for Render and the granting of the motion made by counsel for the Trust Company counsel for Render at the proper time duly excepted, and these rulings are the only errors assigned.

[1] The motion made by counsel for Render was addressed to the sound discretion of the trial court, and, unless a clear abuse of discretion is shown, this court will not interfere. It does not appear but that full opportunity was given to counsel to present whatever defense he had, and, if he failed to present all his case when he had the opportunity he could not, as a matter of right, ask the court to reopen the case after he had rested. This leaves the question as to whether the trial court erred in directing a verdict for the Trust Company as the only one to be considered. If evidence that the Trust Company paid money upon unauthorized checks placed the burden of proof upon it to show that the money it paid out upon the unauthorized checks actually went to the use and benefit of the drawer of the check, then it is difficult to see why the court did not commit error in directing a verdict. On the other hand, if the burden of proof was upon Render to show that the money paid on unauthorized checks was not paid out for the benefit of the Coal Company, then the ruling of the court may be sustained.

Render had the right to show in defense of the suit against him that there was nothing due upon the note. For this purpose, he had the right to show the state of the account between the Coal Company and the Trust Company. He did show that the Trust Company had paid out on vouchers or checks which he claimed were unauthorized the sum of $39,331.12 of the moneys of the Coal Company. The question then is: Was there sufficient evidence introduced by Render to show that the Trust Company ought to be charged with this amount? The agreement testified to by Render as to the form of voucher or check, entered into between himself as president of the Coal Company and Gardner as treasurer of the Trust Company, must be admitted. That the vouchers introduced in evidence were not in accordance with the agreement must also be admitted. Before considering the effect of the agreement, however, we must consider the contention made by counsel for the Trust Company that the agreement was void for the reason that Gardner, who represented the Trust Company, was also a stockholder and officer of the Coal Company.

[2] The principle of law that an agent cannot serve two masters without acquainting both of all the facts attending a particular transaction is invoked. Gardner, however, had no personal interest in making the agreement that was in any sense adverse or antagonistic to the interests of the Trust Company, nor was the interest of the Coal Company in the agreement such an adverse interest as would prevent Gardner from acting for the Trust Company. It was an ordinary business arrangement which could in no sense injure the Trust Company if performed. Gardner was acting within the scope of his authority in obtaining the deposits of the Coal Company, and could very properly agree that these deposits should be paid out only in a certain way. Render lived in Oklahoma, and he undoubtedly wanted some arrangement that would secure the funds of the Coal Company against unauthorized disbursements. We are, therefore, of the opinion that there was nothing in the relation of Gardner to the Coal Company that would render the agreement made by him with Render void.

The rule of law invoked is based upon the principle that an agent will not be allowed to represent two masters whose interests in the particular transaction are adverse.

[3] Render could have simply told Gardner not to pay out the moneys of the Coal Company except upon the presentation of a particular form of check or order, and the instructions would have been binding. The evidence is wholly to the effect that Gardner acted only for the Trust Company in making the agreement. In such a case the fact that he was also an officer of the Coal Company for which he did not act becomes immaterial. As he acted only for the Trust Company, his knowledge of the agreement must be chargeable to the Trust Company. We are satisfied that it having been shown by Render that the funds of the Coal Company had been paid out by the Trust Company to the amount of $39,331.12, upon unauthorized vouchers or checks, that the Trust Company could not claim credit for such payments without showing that the money was actually applied to the use and benefit of the Coal Company, or that payment on these unauthorized vouchers was known to and ratified by the Coal Company. Zane on Banks and Banking, § 149; Gladstone Exchange National Bank v. Keating et al., 94 Mich. 429, 53 N. W. 1110; Metropolitan National Bank v. Race, 32 Ill. App. 126; National Dredging Co. v. President, etc., 6 Pennewill (Del.) 580, 69 Atl. 607, 16 L. R. A. (N. S.) 593, 130 Am. St. Rep. 158; Coots v. Bank of the United States, 3 Cranch, C. C. 95, Fed. Cas. No. 3,204; Ellis v. Western National Bank et al., 136 Ky. 310, 124 S. W. 334; 3 Morse on Banks and Banking (3d Ed.) §§ 440–440b. This view of the law compels us to hold that the testimony of Render made a prima facie case against the Trust Company as to the unauthorized vouchers, and that the burden of proof was thereby shifted from Render to the Trust Company, either to show that there was no such agreement as testified to by Render or that if made it had been waived, or that the money paid out was paid out for the use and benefit of the Coal Company.

We have carefully examined and considered the argument of counsel for the Trust Company, but we are not persuaded that their view of the case is the correct one.

Judgment reversed, and new trial ordered.