This case is distinguishable from the unreported case ofDembrow v. Realty Security Corporation (Docket 77, p. 160), in which I filed a memorandum of opinion July 10th, 1930. In the case sub judice, Finery Underwear Company, Incorporated, had a depositor's account with the City Trust Company of Passaic. A relationship of debtor and creditor existed between said parties. The Finery Underwear Company, Incorporated, was adjudged insolvent by this court on June 23d 1927, and complainant was appointed receiver. The bill of complaint herein has subjoined thereto a consent signed on June 22d 1927, by the defendant Goldstein and another officer of the corporation, to the appointment of a receiver. The corporation was indebted to the defendant, City Trust Company of Passaic, in the sum of $5,000 on a promissory note dated April 27th, 1927, which by its tenor would mature July 27th, 1927. Said note was endorsed by the defendant Goldstein and another officer of the corporation. On June 15th, 1927, six weeks before the time when said note would mature, and eight days before the adjudication of insolvency and appointment of receiver, the trust company, upon the oral direction to its cashier by the defendant Goldstein, who was president of the insolvent corporation, charged the account of said corporation with the amount of said note. At the same time the trust company credited said account with the sum of $34.15 for interest rebated. The action of the defendant-president was without the knowledge of other officers or stockholders. He was not expressly empowered by the corporate by-laws to authorize the disbursement of corporate funds. It appears from the proofs herein that said note was a renewal of an original indebtedness of $5,000 contracted by means of a promissory note discounted by the corporation *Page 82 
with said trust company about eight months prior, the original note having been renewed from time to time without reduction in amount. When said account was opened a copy of a resolution adopted by the board of directors of the corporation relating to the withdrawal of funds from said account was filed with the trust company. Such resolution provided that withdrawal of corporate funds should be upon the check of the corporation signed by two of its officers. The trust company had in its files a signature card evidencing like withdrawal requisites. On June 16th, 1927, the defendant-president Goldstein, and another officer of the corporation, withdrew the sum of $1,600 each from the funds of the corporation deposited to its credit with the defendant trust company, and on June 21st, 1927, withdrew the sum of $500 each therefrom. Such withdrawals were ostensibly intended to reimburse them for loans previously made to the corporation. When such withdrawals were made, and when the defendant trust company charged the above-mentioned note of $5,000 against the account of the corporation, only $35.92 remained to the credit of said account. Goldstein well knew when he withdrew said moneys, and when he directed the cashier of the trust company to charge the account of the corporation with the amount of the aforesaid note of $5,000, that the corporation was insolvent. The trust company was chargeable with knowledge, and could have readily ascertained upon inquiry and the exercise of due diligence the insolvency of said corporation, or that it contemplated insolvency. See Jessup v. Thomason, 68 N.J. Eq. 443. The corporation's available assets when the aforesaid withdrawals were made were insignificant, its liabilities were considerable, and its legitimate credit was exhausted. The corporation had practically suspended its business from and after June 1st, 1927, as a result of the embezzlement by one of its officers of considerable of its funds. Such embezzlement was ascertained by the officers of the company a few days prior to Decoration Day, 1927. The embezzler was arrested. The affair became one of public notoriety. The circumstances under which the aforesaid withdrawals of $4,200 by the defendant Goldstein *Page 83 
and another officer of the corporation were made were so unusual that the transaction should have put the trust company on inquiry as to the reasons therefor. The withdrawals were made in cash and some, if not all, of the money were turned over to the cashier of the trust company who gave in return therefor a cashier's check. The proofs herein show that the method resorted to by the trust company of charging the account of the corporation with the amount of the aforesaid note was unusual. It was so unusual as to put the cashier of the trust company upon inquiry, if he were diligent, as to why the usual formalities of payment by check of the corporation signed by two of its officers were not complied with. The unusual circumstance of the oral direction by the defendant-president Goldstein of the insolvent corporation, to the cashier of the defendant trust company to charge the account of the corporation with the amount of the promissory note, which by its tenor was not due, and upon which note Goldstein was an endorser, and the charging by the trust company of the amount of said note against the account of the corporation without a requisite check therefor, must be deemed as imputing to the cashier of the trust company, and thus to said company, knowledge or reasonable cause to believe that the debtor-corporation was insolvent, or that it contemplated insolvency, and that the charging of the amount of said note against the account of the corporation would effect a preference unauthorized by law. All previous withdrawals had been by check of the corporation with signatures of officers as required by the resolution and bank signature card hereinabove mentioned. When prior promissory notes became due payment thereof was made by check of the corporation containing requisite signatures of officers. The proofs herein evidence that the defendant Goldstein sought to obtain an unlawful preference in payment of indebtedness owing to him by the corporation, and that the trust company sought to obtain an unlawful preference of the sum of $5,000 on the note aforesaid before payment of such note was due, when the debtor-corporation was known by said parties to be insolvent or contemplating insolvency, and thus to circumvent the prohibition *Page 84 
against preferences contained in section 64 of the Corporation act. Section 66 of the Corporation act, insofar as it relates tomutual dealings and just set-offs, cannot avail the defendant trust company in the case sub judice because the time for the payment of the note of $5,000 charged against the account of the insolvent corporation had not matured, and the corporation at the time had not been adjudged insolvent. The proofs herein show that at all times between June 1st and June 23d 1927, the corporation was hopelessly insolvent. The audit of the corporation's accountant evidences that on May 31st, 1927, the liquid assets of the corporation were approximately sixty-five per cent. of its liabilities. The audit made by the receiver's accountant evidences that on June 23d 1927, the date when the bill of complaint was filed and receiver appointed, there was a deficit of $10,258.60. That the president of the corporation had in mind its insolvency is somewhat evidenced by the fact that on June 10th, 1927, a series of checks which had been made out in payment of creditors were voided at the direction of president Goldstein, although a number of checks bearing the same date for small amounts were issued to favored creditors in and about the city of Passaic. The total of the voided checks amounted to $2,590.90. By check dated June 2d 1927, the lawyer who filed the bill of complaint herein was paid the sum of $450 therefor. The date of said check is significant as indicative of contemplated insolvency proceedings at that time. On May 27th, 1927, a check was drawn to the order of cash in the sum of $850, with the explanation "expenses from May 27th to prosecute secretary and treasurer Charles Fieldsteel for embezzlement." The corporation was without sufficient funds at any time between June 1st and the date of adjudication of insolvency to pay to the trust company the sum of $5,000, to pay the voided checks of June 10th, 1927, and to pay Goldstein and Hirsch and other creditors the moneys owing to them. After June 1st, 1927, the corporation did not solicit any further trade. Such merchandise orders as were received by mail were filled and shipped. Attention was directed to the collection of outstanding *Page 85 
accounts. Between June 15th and June 22d 1927, the unusual sum of $5,778.06 was collected and deposited in the trust company account to the credit of the corporation. It is quite apparent that the defendant Goldstein, president of the corporation, who was endorser on the $5,000 trust company note, and to whom the corporation was indebted for moneys loaned, was devoting his attention to augmenting the corporation's bank account sufficiently to enable him and Mr. Hirsch, another officer of the corporation, to withdraw substantial sums from the bank funds of the corporation, and to enable said defendant to effect exoneration of himself from liability on the $5,000 note which he had endorsed for the corporation by directing the trust company to charge said note against the corporation's bank account. The fraudulent purpose of the defendant Goldstein is clearly manifest by the proofs herein. It would be puerile to consider, in view of all the facts and circumstances disclosed by the proofs, that the trust company was unaware of the machination of Goldstein and the financial plight of the corporation. The corporation was a financial weakling from the time of its organization. The paid-in capital was less than $2,000. Goldstein and Hirsch, officers of the corporation, withdrew between June 15th and June 23d 1927 (exclusive of the $2,100, to each of them hereinabove mentioned), the sum of $850 said to be for commission, payroll, help and cash for expenses. By virtue of section 68 of the Corporation act all the property of the insolvent corporation became vested in the receiver upon his appointment. He is vested with power to recover from the defendants Goldstein and trust company the moneys paid to them in contemplation of an adjudication of insolvency and appointment of a receiver for the corporation. Section 64 of the Corporation act provides inter alia that when a corporation becomes insolvent neither the directors nor any officer or agent of the corporation shall in anywise transfer or dispose of any of its property or rights or credits; nor shall they or either of them make any transfer or disposal of property or rights or credits in contemplation of insolvency; and every such transfer or disposition *Page 86 
shall be utterly null and void as against creditors. The complainant-receiver represents creditors, stockholders, and all other interests. It is not disputed by complainant-receiver that corporate funds on deposit with a bank, when a corporation is adjudged insolvent and a receiver appointed, may be applied by way of set-off to the payment of the corporation's indebtedness to the bank without violating the prohibition against preferences contained in section 64 of the Corporation act. Van Wagoner v.Paterson Gas Light Co., 23 N.J. Law 283; Butler v.Commonwealth Tobacco Co., 74 N.J. Eq. 423; Shields v. JohnShields Construction Co., 83 N.J. Eq. 21. Nor is it disputed that such is the rule of law where a note held by such bank has not matured on the date when the corporation is adjudged insolvent and a receiver is appointed. Shields v. John ShieldsConstruction Co., supra; Leech v. Campbell Duncan, Inc.,103 N.J. Eq. 119; 142 Atl. Rep. 364. But a bank cannot in advance of an adjudication of insolvency and the appointment of a receiver, and in contemplation of insolvency, apply the funds of an insolvent corporation on deposit with it (and especially under circumstances shown by the proofs herein) to the payment of an unmatured note of said corporation. If a corporation be in fact insolvent, or if insolvency be contemplated, it cannot secure a pre-existing debt, whether or not the creditor has notice of its financial condition. Regina Music Box Co. v. Otto Sons,65 N.J. Eq. 582; Smathers v. Leith, 92 N.J. Eq. 165. The defendants will be obliged to return to the complainant-receiver the moneys aforesaid which they unlawfully obtained by way of undue preference. Jessup v. Thomason, 68 N.J. Eq. 443. It is a well-established rule of law that if payment is made by a bank from the funds of a depositor on a check improperly signed, the amount thereof may be recovered by the corporation or its receiver. 7 C.J. 676 § 395; Ellis v. Western National Bank,136 Ky. 310; 124 S.W. Rep. 334. In Butler v. CommonwealthTobacco Co., supra (at p. 428), it is said: "* * * in the decisions of questions arising in the administration of the assets of insolvent corporations, the courts *Page 87 
of this state, since the earliest case, have uniformly regarded our statute as essentially a bankrupt act, and applied the doctrines which have controlled in bankruptcy proceedings." And in the same case (page 429) it is said: "* * * the bankrupt character of our statute concerning insolvent corporations recognized so long, vindicates the rule adopted in the earliest case and followed ever since." In the federal courts the rule is settled that a bank cannot set-off unmatured notes prior to the bankruptcy although the court may off-set them after bankruptcy even though still not due. Heyman v. Third National Bank ofJersey City, 216 Fed. Rep. 685; Fifth National Bank v. Lyttle,250 Fed. Rep. 361; In re National Lumber Co., 212 Fed. Rep. 928;May v. Henderson, 268 U.S. 111 (69 Law ed. 870, 875). Where, as in the case sub judice, the president of a corporation is not expressly empowered by the corporate by-laws to authorize the disbursement of corporate funds, a payment by a bank-depository merely upon the oral direction of the president is without authority and may be recovered by the corporation for its receiver. Economy Auto Supply Co. v. Fidelity Union Trust Co.,105 N.J. Law 206; 144 Atl. Rep. 30. The legal relation of the defendant trust company to the insolvent corporation was that it would pay out of the latter's funds in its possession, either to said corporation or to its order, and in conformity with its directions. Harter v. Mechanics National Bank,63 N.J. Law 578, 580; Economy Auto Supply Co. v. Fidelity Union Trust Co.,supra (at p. 31). And in the case sub judice upon checks signed by two officers of the corporation. 7 C.J. 676 § 395.
It is manifest from the proofs herein, that the defendant Goldstein, who was president of the corporation, and a director and large stockholder thereof, sought to exonerate himself from liability on his endorsement of the $5,000 note hereinabove mentioned, by directing the cashier of the trust company to charge said note against the funds of the corporation on deposit with it, and thereby prefer the trust company and himself as creditors of the corporation. He cannot thus exonerate himself from liability. He is liable to the complainant-receiver *Page 88 
for the amount of the unlawful preferences thus created by him.Woods v. Metropolitan National Bank (Washington SupremeCourt), 218 Pac. Rep. 266; 4 Am. B.R.R. (N.S.) 1191; 3Collier on Brankruptcy (13th ed.) 1730; Duryee v. Gray,59 N.J. Eq. 621.
I will advise a decree requiring the defendant Goldstein to forthwith pay to the complainant-receiver the several sums of money hereinabove mentioned with lawful interest from the dates when such moneys were received by him; and requiring him also to pay to the complainant-receiver the sum of $5,000, which through his machination was paid to the defendant City Trust Company of Passaic as an unlawful preference in violation of the provisions of section 64 of the Corporation act. I will advise a decree requiring the defendant City Trust Company of Passaic to forthwith pay to the complainant-receiver the sum of $5,000, with lawful interest from June 15th, 1927, for the unlawful preference obtained by said defendant from the assets of the insolvent corporation, in violation of the provisions of section 64 of the Corporation act. The complainant-receiver will, of course, be entitled only to the sum of $5,000 with lawful interest, and payment thereof by either of the defendants will suffice to satisfy the decree with respect thereto.