This is a suit by the receiver of the Grant Lee Garage, Incorporated, to compel the return by various defendants of certain payments made by the corporation. On April 27th, 1931, the receiver was appointed on the application of a creditor who filed a bill on the 21st day of April, 1931. On April 4th, 1931, the garage corporation had conveyed the real estate used by it in its business to one Postel and thereupon ceased to transact its business which was then taken over and conducted by Postel. A sale for not less than $40,000 had been authorized by the stockholders on the 31st day of March, *Page 496 
1931. The sale was made at the price of $42,000, whereof $32,800 consisted of existing first and second mortgages, $1,200 consisted of a purchase-money mortgage and the balance, $8,000, was cash. This cash was directed to be paid to various creditors among whom are the defendants; and subsequently the whole $8,000 was so paid immediately following the transfer of title.
With the exception of the defendant, the Palisade National Bank, all the defendants received payments for antecedent debts. The payment to the Standard Oil Company of New Jersey was for goods previously sold; that to Roots Velsey, Incorporated, was for past due insurance premiums; and that to Ryan and to Milnes was for commissions claimed to have been earned on the sale of the premises.
At the time of the conveyance to Postel, there seems to be no doubt but that the corporation was insolvent. By that conveyance it disposed of all its property and ceased to conduct its business. It had owed wages for a considerable time to Postel and another employe. The sum realized on the sale was insufficient to pay all the creditors.
Under these circumstances the payments were made to creditors who were not bona fide purchasers for value. The question whether these creditors had notice or not is immaterial. Section 64, General Corporation act. Hoover Steel Ball Co. v. SchaferBall Bearings Co., 89 N.J. Eq. 433. In the case of Roots 
Velsey, Incorporated, there must have been actual notice as Mr. Velsey was an officer of both corporations. The payment for commissions to Ryan and Milnes was improper for the additional reason that according to their own testimony they did not represent the corporation but were agents of the purchaser, Postel.
These defendants will be ordered to return the payments to them.
In the case of the Palisade National Bank, the circumstances are different. In April, 1930, the garage borrowed money from the bank and gave a note therefor which was renewed from time to time with certain reductions of principal until August, 1930. *Page 497 
At that time the indebtedness had been reduced to $3,050. The note was again renewed on condition that the garage corporation maintain on deposit, not subject to draft, the sum of $500. A certificate of deposit dated August 28th, 1930, for $500 was made out to the garage corporation, expressly not subject to draft and was endorsed by the corporation and delivered to the bank. The bank retained it in its possession during various renewals and reductions of the notes. The final renewal note was dated March 24th, 1931, and came due on April 24th, 1931. When it was not paid, the bank applied the amount of the certificate of deposit and collected the balance, $1,900, from an endorser. It is the amount of this certificate of deposit which the receiver asks the defendant bank to turn over to him.
The certificate of deposit was specifically pledged as collateral to secure the bank long before the conveyance to Postel. There is no evidence that at the time of this pledge the garage corporation was insolvent or contemplated insolvency. At the time the certificate of deposit was delivered, the garage was a going concern and continued to be such for many months. This is not a case of attempted set-off or payment made in contemplation of insolvency on an immature obligation, such as in the case ofRogosin v. City Trust Co., 107 N.J. Eq. 79. There is no proof that the bank knew of the insolvency of the garage. Nor was it a payment out of funds subject to the control of the garage corporation. The bank simply realized on a specific pledge made to it long before. The bank is entitled to retain the $500 represented by the certificate of deposit. *Page 498