### In re CHAPPELL.

#### (District Court, E. D. Virginia. December 31, 1901.)

1. BANKRUPTCY—PAYMENTS WITHIN FOUR MONTHS—INSOLVENCY—PRESUMPTION —BURDEN OF PROOF.

Where the trustee of one who was adjudged bankrupt on his voluntary petition files a petition alleging that certain partial payments to creditors, made within four months of filing the bankrupt's petition, were made while he was insolvent, and praying that such creditors be required to return such preferential payments before being permitted to receive dividends on their claims, and the creditors answer that the bankrupt was not insolvent at the times such payments were made, no presumption arises from the adjudication in bankruptcy that the bankrupt was insolvent for four months, or any period, before his petition was filed, and hence it is incumbent on the trustee to prove the insolvency.

2. SAME—AMOUNT OF PROPERTY—SUFFICIENT TO PAY DEBTS—EVIDENCE.

A merchant, seven months before filing his petition in bankruptcy, sent a creditor a postdated check and a note for the balance of his debt, and afterwards renewed the note, paying it a little less than four months before the petition was filed. Held, that such acts, while showing that he was not in possession of ready money to meet this particular debt, were not evidence that he was insolvent, within the meaning of Bankr. Act, § 1, subd. 15, providing that a person shall be deemed insolvent whenever the aggregate of his property, exclusive of any which he may have fraudulently concealed or conveyed, shall not, at a fair valuation, be sufficient in amount to pay his debts.

3. SAME—SCHEDULES—ASSETS IN EXCESS OF DEBTS.

The schedules of a voluntary bankrupt prepared and filed with his petition as required by Bankr. Act, § 7, subd. 8, showed the value of his assets, as estimated by him, to be largely in excess of his debts. Subsequently additional claims were filed, which increased the indebtedness to nearly the estimated value of the assets, and sufficient was not realized out of the assets to pay the debts in full. During the four months prior to filing his petition, the amount and value of assets and amounts of his debts had remained relatively about the same. Held, that he was not insolvent at the times of making certain part payments to his creditors during such four months.

In Bankruptcy.

The following is the report of George S. Bernard, Referee:

The undersigned referee respectfully reports to your honor that after the supreme court of the United States rendered its decision in the case of Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, touching preferences, and there was no longer reason for deferring the consideration of the matter of controversy between R. D. Gilliam, the trustee representing the general creditors of the bankrupt, and the nineteen several creditors who were alleged in the petition filed by the trustee to have received from the bankrupt, in part payment of their respective claims, sundry sums of

113 F.—35

money as preferences, within the meaning of the bankruptcy act, and who said trustee prayed might be required to surrender said preferences before being permitted to receive their dividends from the bankrupt's estate, the referee, on the 26th day of June, 1901, made an order directing that said nineteen creditors appear before him at a time and place in the order mentioned, to show cause, if any they could, why the prayer of said petition should not be granted. A copy of this order, and of the extract from said petition served upon said nineteen creditors, marked "O," is filed with this report, from which it will be seen that these creditors had proved claims aggregating the sum of $3,938.42, and at different dates from July 13 to November 1, 1900, received sundry payments, aggregating the sum of $2,914.42. Upon inspection of the record in this cause, it will be seen that the dividends of these creditors, aggregating fifty-five and one-third (55⅓) per centum of their said claims so proved, are held to await the decision of the questions raised by said petition, except the parts of said dividends which in the cases of six creditors exceed the amounts so received. With a few exceptions, not necessary to be mentioned, all of these creditors filed answers to the trustee's petition, in each of which the respondent or respondents gave as a reason why the prayer of the petition should not be granted that the bankrupt was not insolvent at the time he made the alleged payment or payments. Other reasons were also given in said answers, not necessary to be stated, under the view taken of this case.

At the hearing of the issues joined between the parties, the creditors to whom said payments were made contended that on the trustee rested the burden of proving the insolvency of the bankrupt at the time he made them. The trustee, on the other hand, contended that, as the bankruptcy act fixes four months preceding the filing of a petition for or against a bankrupt as the period, all preferences given within which are voidable by the trustee, this raises the presumption of insolvency during that period, and that creditors receiving such preferences must accordingly show that the bankrupt was solvent at the time the preferences were given.

Under a well-settled rule of pleading, in legal proceedings of all kinds, a party making an allegation of a fact necessary to sustain his case must prove the truth of the allegation; and this rule, in the absence of any statutory provision affecting it, governs the allegations made in the trustee's petition. He must prove that the bankrupt was insolvent when he made the payments in the petition alleged. Is his contention that there is a presumption of insolvency within the four months preceding the filing of the petition by or against the bankrupt correct? Clearly, in the case under consideration,—that of an adjudication on a petition filed by, and not against, the bankrupt,—there is no such presumption. In an involuntary proceeding, wherein the allegation is that at a certain date the defendant, "while insolvent," did some one of the acts declared by subdivisions 2 and 3 of section 3 of the bankruptcy act to be acts of bankruptcy, the adjudication would, of course, show insolvency at such date,—insolvency being one of the issues; but as was held in the case of George M. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098, an adjudication, when the alleged act of bankruptcy was one of the acts declared by subdivisions 4 and 5 of said section 3 to be acts of bankruptcy,—as, for instance, the making of a general assignment for the benefit of creditors,—does not establish insolvency, insolvency in such case not being an issue. This is apparent upon examination of the opinion of the court in the case referred to. Mr. Justice White, delivering the opinion, having quoted paragraph "a" of section 3 of the act, says: "It is patent on the face of this paragraph that it is divided into five different headings, which are designated numerically from 1 to 5. Now, the acts of bankruptcy embraced in divisions numbered 2 and 3 clearly contemplate not only the commission of the acts provided against, but also cause the insolvency of the debtor to be an essential concomitant. On the contrary, as to the acts embraced in enumerations 1, 4, and 5, there is no express requirement that the acts should have been committed while insolvent. Considering alone the text of paragraph 'a,' it results that the nonexistence of insolvency at the time of the filing of a petition for adjudication in involuntary bankruptcy, because of the acts enumerated in

1, 4, or 5, which embrace the making of a deed of general assignment, does not constitute a defense to the petition, unless provision to that effect be elsewhere found in the statute. This last consideration we shall hereafter notice." Justice White, in a subsequent paragraph of this opinion, referring to paragraph "c" of section 3, which provides that "it shall be a complete defense to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this act at the time of the filing of the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed, and under said subdivision one the burden of proving solvency shall be on the alleged bankrupt," says: "We are concerned only with the meaning of the words as used in the law we are interpreting. Now, the context makes it plain that the words relied on were only intended to relate to the first numerical subdivision of paragraph 'a.'" From what was said by the court in this well-considered case, it appears that an adjudication in an involuntary proceeding is only evidence of insolvency in certain cases and at certain dates, and not of insolvency in all cases. Of what is evidence in a case of voluntary bankruptcy, Mr. Collier, in his work, Coll. on Bankr. (3d Ed.) p. 46, says: "Any person owing debts, as defined in section 1 (11), may file a voluntary petition. The present act does not in express terms require that the person shall be insolvent, or unable to pay all his debts in full, as did the act of 1867; and there seems to be no reason why, if a solvent person cares to have his property distributed among his creditors in bankruptcy, he should not be allowed to do so. It will not be necessary to allege insolvency in the petition, nor to prove it, to procure an adjudication." If this careful text writer is correct—and he appears to be—in his statement that a solvent person may be adjudged a voluntary bankrupt, the adjudication, so far from creating, as contended by the trustee, a presumption that the bankrupt was insolvent during a period of four months before the filing of his petition, does not even show that he was insolvent at the date of the filing of the petition. It is true that the bankrupt in his petition alleged that he owed debts which he was unable to pay in full; but, as Mr. Collier says, this was an allegation neither necessary to be made nor necessary to be proved. Let us, however, for argument's sake, assume that the adjudication established the fact of insolvency on the 8th of November,—the date of the filing of the bankrupt's petition and of the adjudication. This fact alone, whilst consistent with, did not show, insolvency at a previous date. In the case of In re Rome Planing Mill (D. C.) 96 Fed. 812,—a proceeding in involuntary bankruptcy, wherein the petition was filed on the 8th day of November, 1898, and the controversy was whether or not certain judgments against the bankrupt corporation obtained on the 17th day of October, 1898, were suffered or permitted by the debtor "while insolvent,"—District Judge Coxe, of the Northern district of New York, said: "As before stated, it is necessary for the petitioners to prove the judgments, the levy, the sale, and the insolvency on October 17, 1898, the date of the judgments. The referee finds all of these facts except the insolvency. The finding that the company was insolvent November 1st does not meet the requirements of the statute. The company might have been solvent on October 17th, and hopelessly insolvent two weeks later." The bankrupt, Jno. A. Chappell, might have been insolvent on the 8th of November, 1900, the day on which he filed his petition and was adjudged a bankrupt, and yet solvent during the period of time from July 13 to November 1, 1900, covering the several payments in the trustee's petition mentioned. The simple fact that he was adjudged a bankrupt proves nothing beyond insolvency at the date of the filing of the petition, if it proves this.

If, then, there is no presumption of insolvency at any date previous to the filing of the bankrupt's petition arising from the adjudication,—a proposition which seems clear,—was there any fact produced in evidence to show such insolvency? Let us now consider this question: From two letters of the bankrupt written to the creditors Jonas Bros., and filed with their answer to the trustee's petition, it appears that on the 4th of April, 1900, the bankrupt, being indebted to said creditors, sent to them a check for a

part of his indebtedness, and a note for the residue, with the request that the check, which he dated April 20th, be held until that date. When the note fell due, on the 21st of June, he paid it, but drew on his said creditors for $100 with which to make the payment, at the same time sending them a note for that sum, payable 30 days after date, which note he paid at its maturity; this being the $100 alleged by the trustee to have been paid July 23, 1901, as a preference. This transaction, the trustee contends, is evidence tending to show the bankrupt's insolvency. It shows that the bankrupt was not in possession of sufficient ready money to meet this particular debt at the time when it first became due, and accordingly asked for an extension of credit upon it; but it is far from showing that at the time he paid his note for $100, that matured on or about July 23, 1900, he was insolvent, within the meaning of the bankruptcy act, subdivision 15 of section 1 of which provides that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." In the case of Duncan v. Landis, 106 Fed. 839, 45 C. C. A. 666, Circuit Judge Gray, delivering the opinion of the circuit court of appeals, Third circuit, referring to and criticising a charge of the lower court, says: "We think the learned judge of the court below, in thus charging, gave the jury an erroneous impression as to how a fair valuation of the property of the debtor was to be arrived at. We think that the present market value of the property in question would be a fair valuation of the same, but there is nothing in this section of the act that market value should be ascertained by what a purchaser would give who desired to take advantage of the necessities and embarrassments of the owner, in order to procure the same at a price less than its real or market value. We think the words above quoted from the charge of the court below, which we have italicised, have no place in an explanation of what is the criterion of a fair valuation." Taking as a guide the statutory definition of "insolvency" as interpreted in this judicial decision, we find nothing in the record to show that Jno. A. Chappell was insolvent at any time during the period from July 13 to November 1, 1900, during which time he appears to have conducted in the ordinary way his business as a retail dry goods merchant, replenishing his stock from time to time, and keeping it in quantity and value about the same relatively to the aggregate amount of his debts as at the date of the filing of his petition. In the schedules filed with the petition on the 8th day of November, 1900, which he prepared and made oath to as required by subdivision 8 of section 7 of the bankruptcy act, providing that the schedules so prepared and sworn to must show "the amount and kind of his property, the location thereof, its money value, and a list of his creditors, showing their residences, if known, if unknown, that fact to be stated, the amount due each of them, * * *" the bankrupt valued his total property at $14,200, of which he valued his stock of goods at $11,500, the debts due him on open account at $2,500, and his property claimed as exempt at $200. His total debts and liabilities he scheduled as aggregating the sum of $10,664.50. These statements, made under his oath and in conformity to law, show the bankrupt's opinion of the value of his assets, and his estimate of the aggregate amount of his debts. Whilst he stated in his petition that he owed debts which he was "unable to pay in full," the facts stated in the schedules—facts which the statute required him to state—show that he was not insolvent, within its meaning. It is true that the record shows that the aggregate debts proven amount to the sum of $12,887.70, whilst the total money realized from the bankrupt's estate amounts only to the sum of $8,625, with additional assets, according to the statement of the trustee, of the value of probably less than the sum of $200, yet to be administered; but it is also true that, in the inventory of the bankrupt's stock of goods and store fixtures made and returned by the receiver shortly after the adjudication, this portion of his property was valued at the sum of $14,391.32, —a sum exceeding by more than a thousand dollars the aggregate indebtedness so proven.

With all these facts before him, the referee finds no difficulty in reaching the conclusion that the bankrupt was not insolvent when he made the several payments to the nineteen creditors in the trustee's petition mentioned, and that the dividends of these creditors should now be paid to them. He accordingly submits herewith, marked "Decree," a draft of a decree so providing, to be entered by the court if your honor concurs in this opinion.

All of which is very respectfully submitted.

Wm. B. McIlwaine, for trustee.

Wm. & Henry Flegenheimer, Wm. R. McKanney, Hamilton & Mann, Davis & Davis, Bartlett Roper, Jr., Williams T. Davis, George Mason, and Thos. G. Watkins, for opposing creditors.

WADDILL, District Judge. The foregoing report of the referee is approved and adopted as the opinion of the court, and a decree of distribution may be entered in accordance therewith.