[No. 14076. Department Two. August 14, 1917.]

R. D. SIMPSON, *Trustee etc., Appellant*, v. WESTERN HARDWARE & METAL COMPANY, *Respondent*.[1]

BANKRUPTCY—PREFERENCE—BURDEN OF PROOF—INSOLVENCY—STATUTES. In a suit by a trustee in bankruptcy to recover a preference by a bankrupt corporation, the burden is upon the trustee to show that the bankrupt was insolvent when the preference was made, within the state rule that a corporation is insolvent when it is not able to pay its debts in due course of business, making its assets a trust fund for the payment of its debts; and where there is no controversy upon that issue, it is error to submit it to the jury, under the rule of the bankruptcy act, Fed. Stat. Ann., p. 511, providing that a person is deemed insolvent when his property, undisposed of, shall not, at a fair valuation, be sufficient to pay his debts.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 22, 1917, upon the verdict of a jury rendered in favor of the defendant, in an action to recover assets of an insolvent. Reversed.

*W. W. Keyes* and *Thomas MacMahon*, for appellant.

*F. C. Kapp*, for respondent.

HOLCOMB, J.—This action was instituted by the trustee in bankruptcy of the Tacoma Ornamental Iron Works, a do-

[1]Reported in 167 Pac. 113.

mestic corporation, to recover for the benefit of the estate certain alleged preferences made to the Western Hardware & Metal Company. In the complaint are set out three causes of action. Briefly stated they are: (1) A payment of $521.23; (2) the turning over to the defendant of certain materials of the value of $900; (3) the assignment of a certain account receivable in the sum of $1,025. The trial judge held and instructed that the company was not insolvent at the time of the transfers if its property, exclusive of concealed, conveyed and removed property, at a fair valuation, was sufficient in aggregate to pay its debts. There is no conflict in the testimony in the record as to the first and third causes of action. In fact, the statements of counsel on the part of respondent in several places admit the receipt by him of money in the amount alleged, and the assignment of the account. The conflict is limited to the evidence in support of the second cause of action. As to the third cause of action, it would appear from the record that there had been no evidence at all as to it. Respondent admits the receipt of the assignment, but claims that nothing had been collected under it.

The Tacoma Ornamental Iron Works had been doing business for a number of years. In October and November it became very much involved financially and, at the instance of one of the officers of the Bankers Trust Company of Tacoma, a meeting of the creditors, who are designated as the principal creditors, was called. A series of these meetings followed, at which representatives of the West Coast Wagon Company, the Tacoma Foundry and Machinery Company, Tacoma Ornamental Iron Works, Olympia Foundry and Machinery Company, and Walsh & Gardner were present. A representative of the Bankers Trust Company was also in attendance at all of these conferences. At the final conference, held November 2, 1914, an agreement was reached as to what should be done concerning the affairs of the Iron Works. This was put into writing and was signed by all of

the creditors above mentioned, except the Bankers Trust Company. The agreement provided for an extension of time for the payment of obligations, and that the business of the company should be managed by a committee representing the creditors. It provided that this committee should continue to have power to act until the claims were paid, and that they should pay them, provided the claims could be paid off within a period of twelve months from the date of the agreement. The appellant lays great stress upon the remarks of Frank J. Speckert, who, as secretary of the Western Hardware & Metal Company, represented his company at the creditors' meetings. These remarks were made at the first meeting, the last of October, when, in answer to a long distance telephone message from the secretary of the West Coast Wagon company, Speckert came to Tacoma from Seattle to attend the meeting. It is claimed that Speckert made the following statement: "This concern is busted, but we cannot hope to get anything out of it unless we held them up, and bolster the proposition along and tide them over, and I believe they will work out all right." The witness who reports this conversation says: "That is the only thing I remember as showing any actual extent of knowledge with reference to the actual standing of the concern."

The date on which the acts claimed by appellant as constituting the preference were performed was November 7, 1914. On this date, it is admitted by respondent in the pleadings and by statement of several witnesses, respondent received the amount of money alleged by the appellant, the assignment of the account receivable, and a certain amount of steel, etc., of which the admitted value was $337.20. On the same date, a sheet taken from the ledger of the respondent's books showed that the balance due it by the Iron Works was $1,414.53. Thus it is claimed by the plaintiff that, for an indebtedness of the value of $1,414.53, including interest, the respondent received money, goods, and paper of the value of $2,446.23. It might be here noted that the appellant did

not produce any evidence to show that he had made even an attempt to collect the account receivable, or that it was possible to collect it had there been any attempt.

On Saturday afternoon, November 7, 1914, and on Sunday morning, the 8th, the machinery and stock of the Iron Works were removed from the place of business of the Tacoma Ornamental Iron Works and placed in a warehouse on the tide flats in Tacoma. The appellant alleges that respondent directed this work, but he has failed to produce a witness who saw any one of the respondent's employees there when the things were moved. The only thing that would show that respondent had anything to do with it was the statement of the respondent's witness Dodge, that he tagged the metal materials, which were admitted to have been received by the respondent, with tags bearing the name of the Western Hardware & Metal Company, and that he did this under instructions from Mr. Speckert.

On November 9, 1914, a temporary receiver was appointed by the superior court of Pierce county, and on November 12 following, this receiver was made permanent. On the 21st of November, a petition in bankruptcy was filed, and the Tacoma Ornamental Iron Works was adjudicated a bankrupt on February 19, 1915, after a trial before a jury.

The receiver testified that all the assets of the estate had been reduced to cash, that the total amount realized by him was $1,100, and that, at the time of this action, he had on hand $45.30, and nothing had been paid to the general creditors. The admitted amount of the claims was in excess of $5,000.

The appellant makes his stand on the fact that the Iron Works was not able, on November 7, 1914, to meet its bills, as evidence that it was insolvent. In this regard it is also to be noticed that, at the various meetings of the creditors, the Iron Works, by its president, Mr. Paul, furnished a list of its assets and liabilities, and that this list was accepted by the creditors as true until after the receiver had been ap-

pointed by the state court; that at no time in these proceedings were the liabilities of the Iron Works shown to be over $8,800. And it further appears that Mr. Reid and Mr. Turner, of the West Coast Wagon Company, in an affidavit for use in the state court, stated that the assets, including plant and stock and accounts receivable, were worth $9,300. This affidavit was made on November 12, just five days after the transfers. It was also stated by more than one of appellant's witnesses that, on November 7, 1914, the Tacoma Ornamental Iron Works was a going concern. These statements were made at a time when it would have been to the interest of these people to state the contrary, if it were true. This affidavit is explained by the appellant's witnesses as due to the fact that they made it from the memorandum furnished them by Mr. Paul, and that they took his word for it and made no investigation of it. It would also appear that Messrs. Reid, Turner and Graybill had, a few days before this financial trouble, looked over the plant of the Tacoma Ornamental Iron Works with the idea in mind of having their corporation, the West Coast Steel Company, a company owned and controlled by the West Coast Wagon Company, buy the plant. Mr. Graybill testified that, at the time of these meetings of the creditors, they were pretty well informed as to the condition of the Iron Works.

The briefs of counsel in this case have presented the facts very completely, and it is the purpose of this statement to give merely the most important facts.

In a suit by a trustee in bankruptcy to recover a preference alleged to be voidable under § 60b of the act, the burden of proof is upon the trustee to show that the bankrupts were insolvent when the transfer was made, and that the creditor had reasonable ground to believe that the enforcement of the transfer would effect a preference. *In re F. M. & S. Q. Carlile,* 199 Fed. 612; *In re Gaylord,* 225 Fed. 234.

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive

of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." U. S. Bankruptcy Act, ch. 1, § 1, No. 15; 1 Fed. Stat. Ann (2d ed.), p. 511.

The mere fact that a creditor is adjudged a bankrupt raises no presumption of insolvency prior to the filing of the petition. 1 Loveland, Bankruptcy, p. 985; *In re Chappell,* 113 Fed. 545; *Kimball v. Dresser,* 98 Me. 519, 57 Atl. 787; *McNeel v. Folk,* 75 W. Va. 57, 83 S. E. 192. But where the question of insolvency is adjudged in determining an act of bankruptcy in an involuntary proceeding, the fact of insolvency may be taken as established by the adjudication. 1 Loveland, Bankruptcy, p. 985.

This court has held that the assets of an insolvent corporation constitute a trust fund for the payment of its debts, in which all of its creditors are entitled to share ratably. *Conover v. Hull,* 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810; *Nixon v. Hendy Machine Works,* 51 Wash. 419, 99 Pac. 11. And that a corporation that is not able to pay its debts in due course of business is insolvent so far as creditors are concerned, and cannot prefer a creditor. *Nixon v. Hendy Machine Works, supra; Ronald v. Schoenfeld,* 94 Wash. 238, 162 Pac. 43. A conveyance by a domestic corporation after insolvency, preferring creditors, is void, as the property is a trust fund for all of its creditors. *Benner v. Scandinavian American Bank,* 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D 702.

There is an apparent discrepancy between the definition of insolvency under the Federal bankruptcy act, heretofore quoted, and our state rule. In a proceeding in the Federal court to determine the question of insolvency for the purpose of adjudication in bankruptcy, the Federal rule must be followed strictly. But in a proceeding to determine whether a transfer of a debtor is a preferential one, the state rule of in-

solvency is the one to be followed. Appellant requested instructions to the jury to the effect that, if the respondent was not able to pay its debts in due course of business, it would be deemed insolvent, which instructions were refused.

There is very little conflict; in fact, it is almost conclusively shown that, at the time of the transfers complained of, respondent was not able to pay its debts in due course of business. This issue was erroneously submitted to the jury under the instructions of the court. We may presume that the facts resolved by the jury against the insolvency of the respondent at the time of the transfers were so resolved by finding that the aggregate of all of the debtor's property, exclusive of property conveyed, transferred, concealed or removed with intent to defraud, hinder, or delay creditors, at a fair valuation, was sufficient in amount to pay its debts. While we may well doubt that fact, there was evidence that, in the proceedings in composition of the debts with the creditors before the insolvency was established in the state court, the creditors accepted statements of the company showing its liabilities to be something over $8,800 and its assets, including real estate, plant, and stock and accounts receivable, were worth $9,300. Nevertheless the fact remains that, at that time, the corporation was not able to pay its debts in due course of business, and it might be considered that its assets were somewhat inflated at that time.

Since it must be determined that the corporation was insolvent within the state rule at the time of the transfers in question, the transfers were preferential and should be recovered.

The judgment is reversed for further proceedings conformable to this opinion.

ELLIS, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.