[No. 17397. Department Two. January 16, 1923.]

EDW. L. ROSLING, *Plaintiff*, v. O. E. EVANS COMPANY, *Defendant*.

B. T. WOODS, *as Receiver etc., Appellant*, v. A. B. KIRSCHBAUM COMPANY, *Respondent*.[1]

CORPORATIONS (203)—INSOLVENCY — EVIDENCE — SUFFICIENCY. A corporation engaged in the retail clothing business was not insolvent, at the time it returned to its principal creditor $12,000 worth of goods bought from it which were not paid for, where it appears that its stock of goods on hand was worth $30,000, its store fixtures $4,000, it was indebted to one creditor for $19,000, to the bank for $4,000 to $5,000, and to other creditors in small amounts for $2,000 to $3,000, and it continued as a going concern until all these debts were paid, excepting $3,000 to its principal creditor, after which it became insolvent.

Appeal from a judgment of the superior court for King county, Davidson, J., entered March 18, 1922, allowing a claim against an insolvent corporation, after a trial to the court without a jury. Affirmed.

[1]Reported in 212 Pac. 151.

*Bausman, Oldham, Bullitt & Eggerman* and *J. Kalina (Arthur E. Simon,* of counsel), for appellant.

*Shorts & Denney,* for respondent.

MAIN, C. J.—The plaintiff brought this action on an assigned claim for $307.76 to recover for merchandise sold by Cluett, Peabody & Company, a corporation, to the defendant. After the action was begun, B. T. Woods was appointed receiver for the defendant O. E. Evans Company, a corporation. In the course of the administration of the estate, there was presented a claim to the receiver by A. B. Kirschbaum Company, which was rejected, and subsequently the matter of the allowance of this claim was tried in the superior court and resulted in a judgment allowing the same, from which the receiver appeals.

For some time prior to September 3, 1920, O. E. Evans Company, a corporation, had been engaged in the gentlemen's furnishing and clothing business at Seattle. O. E. Evans was the president, managing officer and principal stockholder of the corporation. A. B. Kirschbaum Company was engaged in the wholesale clothing business at Philadelphia, Pennsylvania. Prior to the date above mentioned, this company had sold to the Evans Company a considerable quantity of clothing, and was a creditor of that company to the extent of $19,000. The Evans Company had other debts aggregating $7,000, four or five thousand of which was owing to a bank. It had been slow in making payments on its accounts and had communicated with the Kirschbaum Company with reference to that company's account. The credit man of the Kirschbaum Company visited Seattle for the purpose of conferring with Evans. As a result, the credit man took back $12,000 worth of the clothing at the invoice cost price and credited the account of Evans Company with

that sum. Thereafter the company continued to do business until a receiver was appointed for it on the 28th day of May, 1921.

The controlling question, as we view it, is whether the Evans Company was insolvent on September 3, 1920, the date on which it returned the $12,000 worth of goods to the Kirschbaum Company. It is the settled doctrine of this court that the assets of an insolvent corporation constitute a trust fund for the payment of its debts in which all of its creditors are entitled to share ratably, and that an attempt to prefer one creditor as against another or others is void. This court has also adopted the rule that a corporation that is not able to pay its debts in due course of business is insolvent so far as creditors are concerned, and, therefore, is unable to prefer a particular creditor or creditors. *Nixon v. Hendy Machine Works,* 51 Wash. 419, 99 Pac. 11; *Simpson v. Western Hardware & Metal Co.,* 97 Wash. 626, 167 Pac. 113.

Inquiry will then be directed to the determination of the question as to whether, at the time the goods were returned to the Kirschbaum Company, the Evans Company was insolvent within this rule. At the time mentioned, the invoice cost price of the stock of the Evans Company was approximately $50,000. In addition to this, the fixtures in the store were worth about $4,000. The merchandise at the time, as the evidence shows, was worth less than the invoice price because prices had been receding. It is well within the evidence to say that the value of the stock at the time mentioned was approximately $30,000. There was evidence that it could have been replaced for twenty-five per cent less than the invoice cost of it, which would have made it worth more than $30,000, but for the purpose of this opinion we will accept the more conservative figure

and consider it as worth $30,000. Add to this the value of the fixtures would make assets worth $34,000. The liabilities were $19,000 to Kirschbaum Company and between $4,000 and $5,000 to the bank, and the balance, two or three thousand dollars to other creditors in small amounts for merchandise purchased from them. After the goods mentioned were returned to Kirschbaum, the debts were reduced from $26,000 to $14,000, the goods having been taken back at a value of $12,000. If the goods were worth twenty-five per cent less than the invoice cost, the assets, by the return of this merchandise, would be reduced $9,000, or from $34,000 to $25,000. The Evans Company then had assets amounting to $25,000 and debts of $14,000. After this time, as above stated, the company continued to do business, selling goods in the regular course and purchasing from various wholesale houses to replenish its stock. At the time the return was made to the Kirschbaum Company, the Evans Company retained something like forty overcoats which had been purchased from that company, and these apparently were sold, or offered for sale, in due course the same as the other merchandise in the store. There was nothing secret about the transaction with the Kirschbaum Company. The goods were packed in boxes on the sidewalk in front of the store during business hours and the bank was informed of the transaction. It is true that the Evans Company had been slow in meeting its accounts prior to September 3d. Business conditions had been on the decline, and subsequent to that time a further depression occurred and a further shrinking of values took place. All the debts which were in existence on September 3d were subsequently paid, including the indebtedness to the bank. Those which existed at the time the receiver was appointed

were for goods purchased subsequent to that time and for money subsequently borrowed. During this time, about $4,000 was paid on the $7,000 balance due to the Kirschbaum Company. The claim presented to the receiver by that company was for the balance due of something like $3,000.

Under the facts above detailed, about which there is little controversy, it cannot be said that Evans Company on September 3, 1920, was insolvent within the rule above stated. The assets at the time exceeded the liabilities by a substantial amount. The business was a going concern. It will not do to say that simply because the Evans Company had been slow in meeting its accounts therefore it was insolvent. If such should be the holding, it would at times subject very substantial business houses to the peril of having a receiver appointed when accounts were not promptly met and paid.

The judgment will be affirmed.

PARKER, FULLERTON, and TOLMAN, JJ., concur.