[No. 13927.    Department Two.    August 29, 1917.]

J. W. Jones, *as Receiver etc., Respondent,* v. Hoquiam Lumber & Shingle Company, *Appellant.*[1]

CORPORATIONS—INSOLVENCY— EVIDENCE — UNLAWFUL PREFERENCES. Where a corporation had liabilities of $10,000 and assets not to exceed $5,000, and was unable to pay its debts as they matured in the ordinary course of business, it is insolvent and it has no right to prefer a creditor by making a conveyance in satisfaction of a debt long past due, no matter what the good faith of the creditor was, and the conveyance will be set aside at the suit of a receiver.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered July 10, 1916, upon findings in favor of the plaintiff, in an action to cancel a deed, tried to the court. Affirmed.

*Morgan & Brewer,* for appellant.

*Raymond J. McMillan* and *Ernest K. Murray,* for respondent.

Holcomb, J.—Respondent brought this action as receiver, to cancel and set aside a deed to certain real estate located in Grant county, given to the Hoquiam Lumber & Shingle Company by the Klipsun Lumber Company. The deed was executed on September 29, 1914. The receiver for the Klipsun Lumber Company was appointed August 31, 1915. The

[1]Reported in 167 Pac. 117.

deed in controversy was recorded in the proper county August 23, 1915, only eight days before the appointment of the receiver.

The complaint alleged that, on September 28, 1914, and at all times since and prior thereto, the Klipsun Lumber Company was insolvent and unable to meet its debts as they matured in the ordinary course of business; that, at the time of the conveyance, its debts aggregated approximately $10,000, and its assets, at a fair valuation, aggregated only $2,000; that, at the time of the appointment of the receiver, the debts of the lumber company aggregated approximately $10,000 and its assets approximately $1,000, and that it had not sufficient funds, and would not have sufficient funds, to pay the claims of creditors in full; that, on the date of the deed, the lumber company was indebted to the Hoquiam Lumber & Shingle Company in the sum of approximately $650, which indebtedness was unsecured and long past due, and the Klipsun Lumber Company had been unable to meet it when it matured in the ordinary course of business; that the only consideration for the deed was the indebtedness of $650; that, at the time of the execution of the deed, the Hoquiam Lumber & Shingle Company, or its agents acting therein, knew, or had reasonable cause to believe, that the Klipsun Lumber Company was insolvent and unable to meet its debts as they matured in the ordinary course of business; that the transfer of the real estate in question to the appellant had the effect of preferring the appellant over the other creditors of the Klipsun Lumber Company of the same class, and enabled it to obtain a greater percentage of its debt than other creditors of the same class.

Appellant, in answer, denied knowledge or information or belief of the insolvency at the time of the conveyance; admitted that the real estate in question was a part of the assets of the Klipsun Lumber Company on September 28, 1914; that it was then of the value of $700; and admitted that, on that

day, the Klipsun Lumber Company was indebted to it for the sum of approximately $650, which indebtedness was long past due and unsecured, and that the Klipsun Lumber Company had been unable to meet it as it matured in the ordinary course of business. All other allegations in the complaint were denied.

The court found as a fact that, on September 28, 1914, and at all times since and prior thereto, the Klipsun Lumber Company was insolvent and unable to meet its debts as they matured in the ordinary course of business; that, at the time of the conveyance, its debts aggregated approximately $10,000, and its assets at a fair valuation did not exceed $5,000; that, at the time of the appointment of the receiver thereof, its debts aggregated approximately $10,000 and its assets approximately $1,000, and sufficient funds had not, and would not, come into the hands of the receiver to pay the claims of the creditors of the insolvent in full.

It is contended by appellant that neither it nor its agents had any knowledge of the condition of the Klipsun Lumber Company which enabled it to know, or have good reason to believe, or put it upon its inquiry as to the fact of, the insolvency of that company; that the transfer of the real estate to it was made in satisfaction of the debt due it, which then approximated $800, and that the transfer was in good faith on the part of both the Klipsun Lumber Company and it. It is further contended that there is no evidence justifying the finding of the court that, on September 28, 1914, the Klipsun Lumber Company was insolvent and that the transfer constituted an unlawful preference.

The evidence in the record is ample to justify the finding that, on September 28, 1914, when the deed was executed, the Klipsun Lumber Company was not able to pay its debts in the ordinary course of business; and that the account of appellant was of long standing, and the account of the Chehalis River Lumber & Shingle Company, another creditor of the

Klipsun Lumber Company, was of long standing, and both were of considerable size and were unpaid and payment had been often demanded. The Klipsun Lumber Company was engaged in the business of buying and selling lumber as a lumber broker. Its only assets consisted of its office furniture, the real estate in question, some accounts receivable which were always assigned to a bank as fast as received for the purpose of obtaining money to pay advances on lumber purchased, and possibly certain mortgages aggregating about $3,500, which it disposed of for $1,800. But the evidence as to the ownership of these mortgages at that time is not satisfactory. It is not clear whether these mortgages were sold prior or subsequent to the date of the deed. The court found that, at that time, the Klipsun Lumber Company had tangible property of the face value of "not to exceed $5,000," and that it had unsecured debts of approximately $10,000; and this is the most favorable finding that could be granted appellant under the evidence.

This court, since the case of *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25, has adhered to the doctrine that, although a private debtor may prefer creditors even to the exhaustion of his property, this will not do in the case of an insolvent corporation, *no matter what the good faith of its creditor is;* that, when a corporation has reached a point where its debts are equal to or greater than its property and it cannot pay in the ordinary course and its business is no longer profitable, it ought to be wound up and its assets distributed; that no device can receive the countenance of the courts which provides for an indefinite continuance of its corporate life against the protests of those who are entitled to share in its property, be it large or little. The doctrine of that case was discussed and reaffirmed in *Conover v. Hull*, 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810, and has been repeatedly adhered to by this court down to *Benner v. Scandinavian American Bank*, 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D 702.

In the last cited case it was said:

"In this state it is the rule that a domestic corporation cannot, after insolvency, prefer its creditors; but, on the contrary, its property is from thenceforth regarded as a trust fund for the benefit of all its creditors, and any transfers or mortgages thereof after insolvency, which have the effect of preferring one creditor over another, are void."

The test of insolvency of a domestic corporation in this state is not the same as the test under the Federal bankruptcy acts. In *State ex rel. Strohl v. Superior Court*, 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177, where it was alleged that the corporation was insolvent in the sense that it was wholly unable to meet its obligations as they matured in the ordinary course of business, the court, after citing the section of the Federal bankruptcy act [30 Stat. L. 544, U. S. Comp. St. 1916, § 9585] providing that, "A person shall be deemed insolvent . . . whenever the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts," said:

"It will thus be seen that the allegations of the complaint in the suit for the receiver in the case at bar would not conclusively make a case under the Federal bankruptcy law, . . . this court has uniformly affirmed the doctrine that the assets of such a corporation are always a trust fund to be administered in equity for the benefit of creditors ratably and equally."

In *Nixon v. Hendy Machine Works*, 51 Wash. 419, 99 Pac. 11, it was said:

"If the . . . company was an independent concern, the evidence plainly shows that it was insolvent in that it was not able to pay its debts in due course of business, and this is the test of insolvency established by this court where the rights of creditors are involved."

Such being the rule in this state, and it being well established by the evidence that the Klipsun Lumber Company was insolvent under that rule at the time the conveyance of the real estate was made, the conveyance was conclusively a

preference and therefore unlawful, and can be set aside at the suit of the receiver of the insolvent for the benefit of all creditors of the same class.

The judgment is affirmed.

ELLIS, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.