### FIFTH NAT. BANK OF CITY OF NEW YORK v. LYTTLE.

(Circuit Court of Appeals, Second Circuit. February 20, 1918.)

No. 129.

**1. APPEAL AND ERROR ☜1017, 1026—REVIEW—JUDGMENT BASED ON REPORT OF REFEREE.**

The findings of fact made by a referee, where the reference is to hear and determine the action, have the effect of the verdict of a jury, and a judgment rendered in accordance with his findings and conclusions, if the findings are supported by no evidence, or are clearly against the weight of the evidence, or if the conclusions of law are erroneous, may be set aside.

**2. BANKRUPTCY ☜303(3)—SUIT TO RECOVER PREFERENCE—SUFFICIENCY OF EVIDENCE.**

Evidence considered, and *held* to sustain findings that bankrupt, at the time of making a preferential payment to defendant, was insolvent, and that defendant had reasonable cause to believe it to be insolvent, and that the payment would effect a preference.

**3. BANKRUPTCY ☜165(1)—VOIDABLE PREFERENCE.**

A bankrupt, which was indebted to defendant bank on immatured notes within four months prior to bankruptcy, and when insolvent and known to be so by defendant, changed its indebtedness, so that it matured at an earlier date, and at the same time assigned to defendant money to become due on contracts at such earlier date, when it was collected and

---

applied by defendant on the indebtedness. *Held,* that such transaction effected a preference, and that the payment was recoverable by the trustee.

4. BANKRUPTCY ⟨⟩165(1)—PREFERENCF—BANKER'S LIEN ON DEPOSIT.

Under the law of New York, which determines the validity of liens on the property of a bankrupt in that state, a bank has no lien on the general deposit of a customer for an immatured indebtedness to it, and no right to apply the deposit of an insolvent debtor, prior to his bankruptcy, upon his notes not yet due, and such application effects a preference.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by John L. Lyttle, trustee in bankruptcy of the Wills & Marvin Company, against the Fifth National Bank of the City of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

This is a suit by a trustee in bankruptcy to recover a preferential payment of $30,500. The defendant is a corporation organized and existing under the laws of the United States of America. The bankrupt is a corporation organized and existing under the laws of the state of New York. The order of adjudication in bankruptcy was entered on November 17, 1913; an involuntary petition having been filed on October 23, 1913. A meeting of the creditors was held on January 17, 1914, and at that time complainant was duly appointed trustee in bankruptcy and has ever since acted as such. Two causes of action are stated.

The first cause of action declares that on September 20, 1913, the bankrupt was indebted to defendant in the sum of $30,500, for which indebtedness the bank held notes made by the bankrupt, which notes fell due at various dates in September, October, and November, which notes were totally unsecured at the opening of business on the day aforesaid. The last day named the bankrupt paid to defendant $19,500 in payment of six separate notes of varying amounts, aggregating $19,500, which notes matured after October 17, 1913. On September 26, 1913, the bankrupt also paid to defendant $5,000, and on October 2, 1913, $3,500, and on October 17, 1913, $2,500, all of which amounts were in payment of various notes held by the bank on October 17th. All the aforesaid payments are alleged to have been made with the intent of giving a preference to defendant; and it is also averred that the bankrupt was at the time insolvent, and that defendant had reasonable cause to believe that he was insolvent, and that a preference was intended. The liabilities of the bankrupt amounted to $190,648.88, and the amount of the assets which reached the complainant's hands amounted to $17,581.99. Judgment is demanded in the sum of $30,500, with interest.

The second cause of action declares the same facts stated in the first cause of action. But the first cause of action proceeds upon the theory that a preference was received by defendant by payment of the notes held by it on September 20th. And the second cause of action goes upon the theory that a preference was received by payment of the notes held by defendant on October 17th. It is conceded that only one recovery is sought. The decision was in favor of the trustee on his second cause of action, and judgment has been entered in his favor in the sum of $38,269.06. The cause was by stipulation of the parties and the order of the court referred to David Leventritt as sole referee to hear and determine. The judgment above referred to was entered in accordance with his findings of fact and conclusions of law.

Richard Kelly, of New York City, for plaintiff in error.

Olcott, Bonynge, McManus & Ernst, of New York City (Irving L. Ernst, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge (after stating the facts as above). [1] The right of the District Judge with the consent of the parties to refer the cause to a referee to hear and determine is not controverted. The right is incident to all judicial administration. Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085. The findings of fact made by a referee, where the reference is to hear and determine the action, have the effect of a verdict of a jury. A judgment entered in accordance with his findings and conclusions, if the findings are supported by no evidence, or are clearly against the weight of the evidence, or if the conclusions of law are erroneous, may be set aside.

The bankrupt company was a building contractor, and was indebted to defendant in the sum of $62,500, which indebtedness matured on October 17, 1913. The whole amount of this indebtedness had been secured on September 20th by assignments of moneys which the bankrupt would be entitled to receive under its building contracts, which money it was understood amounted to $85,000, and would become due and payable to the Wills & Marvin Company on or about October 17th, and would constitute the last large payment to be received by that company under the contracts. The assignments so made were never filed or recorded. The Wills & Marvin Company collected the moneys due under the contracts, and it seems to be conceded that it had a right to do so, and it thereupon deposited the moneys as collected to its own account in the defendant bank; and on October 17th the bankrupt's entire indebtedness to defendant was charged to the bankrupt's deposit account and thus paid.

[2] It became, therefore, important to determine whether on September 20th, when the assignments were made and given as security to defendant, the bankrupt was solvent. It is claimed by defendant that the bankrupt was solvent on that day. The referee, however, found that its financial condition at that time was not materially different from the condition existing when the petition was filed, at which time the bankrupt was clearly insolvent. It could be regarded as solvent only by ignoring claims of $40,000 set forth in the schedules, which the referee thought it impossible to eliminate, and by including among the assets the good will of the business, which it was claimed was worth $50,000, and which the referee thought was worth nothing. The good will of a building contractor in the embarrassing situation in which this contractor found itself could not be said to have a good will of any appreciable value. A building contractor obtains business by submitting bids in competition with other contractors, and his bids are of no account unless he has at his command the financial strength which will enable him to complete his contracts. In this case the bankrupt at the time herein involved did not have the financial ability to perform the contracts into which it had entered, and the good will of the business was unable to secure for it any new contracts, although such contracts were diligently sought. The bankrupt had been figuring on 60 or 80 jobs, amounting approximately to $15,000,000 worth of work, and had failed to obtain any one of them. This court must accept the finding of the referee that the good will of the business was negligible, and that the Wills & Marvin Company on September 20th and at all

times thereafter was insolvent. There is abundant evidence in the record to justify the finding of the referee to that effect.

Did the defendant on September 20th have reasonable cause to believe that the bankrupt was insolvent? It appears that on September 18th a conference took place between the president of the bankrupt and the officers of the bank, and that at that conference the affairs of the bankrupt were gone over in detail. The president of the bankrupt testified that at that conference he called the attention of the defendant to the fact that he had been advised by attorneys that there was a ruling that, if a bankrupt paid a bill four months prior to the date of bankruptcy, that might be considered as a preferential payment, and that he would have to leave it to them to consult their attorneys relative to that point. From 4 o'clock until 7 was spent in discussing the various items in the statement submitted. "They went over the various items in the statement," he says, "and then said that they would have to discuss the matter with their attorney, and would let me know." The next day in the afternoon he was notified that they had consulted their attorney, and had decided to require him to assign the balances owing and to become due to the bankrupt under all the contracts upon which the bankrupt was working at that time, and which aggregated about $85,000. The bankrupt was required to assign, and did assign to the defendant, practically everything that it had, except machinery and tools, valued at about $8,000 or $10,000. The defendant was informed at that time that the bankrupt had also been unable to secure any new contracts. The president of the bankrupt also told defendant at that time that he could not see anything ahead except slow liquidation, unless his corporation was fortunate in obtaining additional capital.

Why should the defendant have been told by the president of the bankrupt that he had been informed by an attorney that, if a bankrupt paid a bill four months prior to the date of bankruptcy, it might be regarded as a preferential payment and that defendant had better consult its attorneys? There is only one inference to be drawn from such a conversation, and that is that bankruptcy was imminent. Such conversations do not occur concerning the affairs of solvent corporations. And conversations as to the absolute necessity of new capital if a company it to be able to continue in business certainly imply a doubtful financial basis. It is difficult to believe that the experienced officials of the defendant bank did not know that the bankrupt was insolvent at the time of the assignments. If they did not know it, they certainly had notice of suspicious circumstances sufficient to put persons of ordinary prudence and sagacity upon notice, and they are charged with all the knowledge which they would have acquired, had they made the inquiry which the law under the circumstances demanded of them. The record certainly discloses that there was evidence in the case sufficient to justify the referee, if he believed it, in finding that the defendant's officers knew, or had reasonable cause to believe, that the Wills & Marvin Company on September 20th was insolvent. And this court must accept the referee's finding to that effect.

[3] This brings us to the question whether the transactions which

occurred on September 20th resulted in a preference to the bank, and, if so, in what amount. The referee has found as a fact that on September 20th the Wills & Marvin Company was indebted to the bank in the sum of $30,500, for which it held the notes of that company, which notes were payable at the defendant bank, the dates, amounts, and due dates of which were as follows:

| Date of Note. | Amount. | Due Date. |
|---|---|---|
| 1913. | | |
| June 26 | $5,000 | September 29 |
| July 2 | 1,500 | October 2 |
| July 2 | 2,000 | October 2 |
| July 17 | 2,500 | October 17 |
| July 23 | 4,000 | October 23 |
| July 29 | 3,500 | October 29 |
| August 13 | 500 | November 13 |
| August 19 | 2,500 | November 19 |
| August 21 | 5,000 | November 21 |
| August 25 | 4,000 | November 25 |

The referee has found that the Wills & Marvin Company made a transfer to the defendant bank on September 20th, which was within four months of the filing of the petition in bankruptcy, and that the transfer enabled defendant to obtain a preference, and that the total amount of the preference was $30,500, which sum the defendant received on October 17th through the effect of the enforcement of the transfer. The whole object of the arrangement which the Wills & Marvin Company entered into with the defendant bank on September 20th was to change the existing obligations of the former to the latter, so that they would mature at a date prior to that when by their terms they became due, and to provide the bank with funds at the date of the earlier maturity, by the assignment of the moneys then to become due to the Wills & Marvin Company under its building contracts. That this resulted in a preference appears to us to be beyond question. We are unable to see that the referee fell into any error of law in so holding.

[4] There remains the question whether he fell into error in his conclusion that the doctrine of set-off was inapplicable to the facts of this case. The defendant bank claims that the moneys on deposit on September 20th, being in a regular deposit account, were subject to what is known as a "banker's lien" in its favor for notes made by the Wills & Marvin Company and held by the bank, although they did not mature until some time thereafter. It is its theory that it was at that time entitled to charge up the notes against the deposit, and that the transaction cannot be questioned as a preference by the trustee, but was merely an exercise by the bank of its right of set-off, even if the depositor were then insolvent and the bank knew of that fact. We are unable to take that view of the case.

It is undoubtedly true that a bank has a general lien on all moneys of a depositor which are in its possession, for the balance of a general account, provided it is then due and payable, but not otherwise. A lien arises from contract or operation of law. It is not claimed that there was any express contract which gave the bank a lien; and none arose on that or any prior day by operation of law. The relation between

the bank and its depositors on September 20th was still that of debtor and creditor, and on that day it had no lien on the funds deposited for debts not yet matured. Jordan v. National Shoe & Leather Bank, 74 N. Y. 467, 472, 473, 30 Am. Rep. 319. The above case shows that such is the law of the state of New York, and the validity of the lien on the property of the bankrupt is to be determined according to the local law. Black on Bankruptcy, p. 717; Collier on Bankruptcy (9th Ed.) pp. 908 (b), 912 (c); Remington on Bankruptcy (2d Ed.) vol. 2, § 1459. There being no lien in favor of the bank on September 20th, no reason existed to prevent the Wills & Marvin Company from withdrawing on that day the whole of its deposit.

The right of withdrawal existed, for on that day the bank could not have exercised a right of set-off, any more than it could have asserted a lien. The bank has called our attention to the decisions of the Supreme Court recognizing the right of a bank to set off a balance due from it against notes of the bankrupt held by it. But in New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, the right of set-off was exercised by the bank after the petition in bankruptcy was filed. And in Studley v. Boylston Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313, the bank, a few months prior to the adjudication in bankruptcy had charged against the depositor's account certain notes as they had matured, which had been made by the depositor and held by the bank. The deposits had been made in good faith, in the usual course of business, and with no purpose of enabling the bank to secure the right of set-off. The court, in sustaining the right of the bank to do what it did, said:

"If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the trustee. But there is nothing in section 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted."

These cases differ from the case at bar, and it is now argued that the right of set-off existed at a date when the notes which the bank held had not matured and prior to the adjudication of bankruptcy. We are not aware that any such application of the doctrine is supported by any Supreme Court decision. We think it is not the law. The bank had no right to set off the unmatured notes until after the bankruptcy proceedings were commenced. Heyman v. Third National Bank (D. C.) 216 Fed. 685, 687; In re Starkweather and Albert (D. C.) 206 Fed. 797. There was no error, therefore, in the referee's conclusion that no right of set-off existed under the facts of this case.

There remains the question as to the right of the defendant bank to participate in dividends. The defendant asserts in its brief that it is entitled to retain its dividends from and out of any recovery by the trustee. The right of defendant to participate in dividends is not challenged by the plaintiff, and the matter can be safely left to the bankruptcy court, to dispose of in accordance with the established rules.

As we find no errors in the findings of fact or conclusion of law, we need not consider what course should be pursued in case we had reached the conclusion that the referee had fallen into error. See Alder v. Edenborn (D. C.) 198 Fed. 928.

Judgment affirmed.