[No. 17926.    Department Two.    September 11, 1923.]

# B. T. Woods, as Trustee in Bankruptcy of the White Shoe Company, Appellant, v. Metropolitan National Bank et al., Respondents.[1]

CORPORATIONS (207, 208)—INSOLVENCY—PREFERENCE—TRUST FUND DOCTRINE—NOTICE OF INSOLVENCY.  On the insolvency of a corporation, its property becomes a trust fund for all its creditors, and a preference may be set aside without showing knowledge of the insolvency.

BANKRUPTCY (6, 18)—PREFERENCES—RIGHTS OF TRUSTEE—ACTIONS —LIMITATIONS.  Section 70e of the bankruptcy act, authorizing the trustee to avoid transfers, gives the right to recover property transferred in violation of state law.

CORPORATIONS (203)—EVIDENCE OF INSOLVENCY—SUFFICIENCY.  A corporation is shown to be insolvent, where it was doing business without the payment of its capital stock, on borrowed capital, with liabilities greatly exceeding its assets.

BANKS AND BANKING (22)—CORPORATIONS (208)—PREFERENCE— TRUST FUND DOCTRINE—RIGHT OF BANK TO OFFSET DEPOSITS.  The daily deposit of funds in a bank by an insolvent corporation, to be checked out, does not constitute an unlawful preference.

BANKS AND BANKING (22)—APPLICATION OF DEPOSITS—DEBTS—UN-LAWFUL PREFERENCE BY INSOLVENT CORPORATION.  Upon the insolvency of a corporation indebted to a bank on notes, the bank cannot set off deposits of the insolvent, where the bank was not induced to change its position to its detriment.

CORPORATIONS (211)—INSOLVENCY—PREFERENCE TO OFFICERS—PAY-MENT OF OBLIGATIONS OF OFFICERS.  An officer of an insolvent corporation who directs the payment of an unlawful preference, is liable to the creditors therefor.

PEMBERTON, J., dissents.

Appeal from a judgment of the superior court for King county, Brinker, J., entered December 13, 1922, upon findings in favor of the defendants, in an action to recover an unlawful preference by an insolvent corporation.  Reversed.

[1]Reported in 218 Pac. 266.

*Battle, Hulbert, Gates & Helsell,* for appellant.

*John S. Jurey,* for respondents Hatfield.

*G. E. de Steiguer,* for respondent Metropolitan National Bank of Seattle.

FULLERTON, J.—The White Shoe Company is a corporation, organized under the laws of the state of Washington. It was organized by the respondent J. L. Hatfield and one C. A. White for the purpose of engaging in the retail shoe trade in the city of Seattle, each of such organizers subscribing for one-half of its capital stock. Upon its organization, the corporation began the business for which it was organized and continued therein until January 4, 1922. The business was under the direct management of White, and proved to be a losing one from the start. In November, 1921, its financial condition was made a subject of inquiry by certain of its creditors, and White at that time employed an expert accountant to go over its books and make a statement of its condition. The accountant made a statement showing its affairs as of November 30, 1921. The statement showed an indebtedness to wholesale dealers of $34,817.86; an indebtedness to sundry local persons for trade fixtures and the like of $2,684.99; and a bank overdraft of $783.21. The report also showed nominal assets of a much less sum. This was made up of valuations placed upon its stock in hand, its trade fixtures, its accounts receivable, and its cash on hand. It also included a consigned stock valued at $2,795.17, a deposit on lease of $1,000, good will valued at $3,000, and an advertising expense of $2,000, charged to "deferred operations." The corporation was also indebted to the respondent Metropolitan National Bank in the sum of $5,500. This indebtedness was evidenced by two promissory notes; the one for $2,500, due on December 6, 1921; and the other for $3,-

000, due on December 20, 1921. Each of these notes was indorsed by the stockholders of the corporation, White and Hatfield. At the time the note for $2,500 became due, $500 was paid thereon, and a new note was given for the balance due in ninety days. This note was also indorsed by Hatfield.

Early in December, following the time the accountant's statement was submitted to White, White put on a special sale of shoes, selling two pairs for the price of one, plus one dollar. After this sale was well under way, White went East for the purpose of making a composition with the corporation's creditors. On leaving, he turned the management of the corporation's business over to Hatfield, who seems theretofore never to have taken any active part in its management, and seems not to have had any knowledge of its actual financial condition. The report of the accountant was shown him shortly after he assumed the management of the business, and, in a consultation with the accountant concerning the corporation's affairs, was advised by that person to use the funds coming in from the special sale in satisfaction of the notes upon which he was indorser. Hatfield followed the advice of the accountant. Beginning with December 17, 1921, he used the entire net receipts of the corporation in payments upon the notes. Payments were made almost daily in varying amounts, the note due December 20, 1921, being paid in full on the 23rd of that month, and the other of the notes by the end of the month.

On January 4, 1922, the corporation was placed in the hands of a receiver at the suit of a creditor. The receiver reduced the assets of the corporation to cash, realizing therefrom $7,524.34. The receiver subsequently began the present action against the respondent bank and Hatfield to recover the sums paid on the notes, basing his cause of action on the ground that the

corporation was insolvent at the time of such payments, and that the payments thus constituted an unlawful preference under the trust fund doctrine of this state. After the commencement of the action, an involuntary petition in bankruptcy was filed against the corporation, under which the corporation was adjudged a bankrupt, and the proceedings transferred to the bankruptcy court. Thereafter the trustee in bankruptcy was substituted as party plaintiff in this action in lieu of the receiver and prosecuted the action to its termination. The trial court entered a judgment dismissing the action, and from the judgment the trustee in bankruptcy appeals.

The principle on which the receiver based his action would seem to be well founded in law. Ever since the case of *Thompson v. Huron Lumber Co.*, 4 Wash 600, 30 Pac. 741, 31 Pac. 25, this court has adhered to the doctrine that an insolvent corporation may not prefer its creditors; that, although an individual creditor may do so, even to the exhaustion of his property, the right does not exist in a corporation; that its property on insolvency becomes a trust fund for the benefit of all of its creditors to be equally and ratably distributed among them. *Conover v. Hull,* 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810; *Benner v. Scandinavian American Bank,* 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914 D 702; *Jones v. Hoquiam Lumber & Shingle Co.,* 98 Wash. 172, 167 Pac. 117; *Simpson v. Western Hardware & Metal Co.,* 97 Wash. 626, 167 Pac. 113; *Williams v. Davidson,* 104 Wash. 315, 176 Pac. 334.

The foregoing citations announce the further rule, also, that, in an action or suit on the part of the receiver to recover as for an unlawful preference, it is not necessary that he show that the creditor, at the time of receiving the preference, had knowledge or reasonable cause to believe that the corporation was

insolvent.  See particularly, *Jones v. Hoquiam Lumber & Shingle Co., supra; Williams v. Davidson, supra.*

Nor were the rights of the parties changed in respect to the right to recover the payments as an unlawful preference by the transfer of the proceedings into the bankruptcy court.  By § 70e of the bankruptcy act, it is provided that the trustee in bankruptcy may avoid any. transfer by the bankrupt of his property which any creditor of the bankrupt might have avoided, and may recover the property so transferred from the person to whom it was transferred.  · That this section gives the trustee in bankruptcy a right of action to recover property transferred in violation of state law, and is not subject to the four months' limitation of other sections (60b, 67e) of the bankruptcy act, was held by the supreme court of the United States in *Stellwagen v. Clum,* 245 U. S. 605.

That the corporation was insolvent at the time these payments on the obligations to the bank were made, the record leaves no room for debate.  Indeed, it would seem that it never was solvent at any time during its existence.  Its capital stock was not then paid in by the subscribers thereto.  It began business on borrowed capital and on the credit it was able to obtain from wholesale dealers.  Certainly, dating from a very short period after it commenced its business, there never was a time when its liabilities did not greatly exceed the value of its assets.  Unless, therefore, the question next to be noticed bars a recovery, there is no reason why the trustee should not have prevailed in the action.

The record discloses that, under the management of Hatfield, the day's receipts from the business conducted by the corporation were deposited with the respondent bank to the credit of the corporation on the morning of the day following their receipt, and that the payments to the bank were made by checks drawn by

the corporation on this fund. It is contended, and rightly so we think, that the deposit itself did not constitute an unlawful preference or a transfer, since the deposit did not cause a diminution of the estate of the depositor. But it is further contended that,

"The deposit so made gave the bank, by simple operation of law, the absolute and unqualified right of set-off of the deposits against the indebtedness of the company to it on its notes,"

and that it could exercise this right regardless of the solvency or insolvency of the corporation, and that what it could do directly is not affected by the manner of its doing; that is to say, if it could have, of its own volition, applied the deposits made to the satisfaction of its notes under the doctrine of set-off, its right is not affected by the fact that the corporation gave it checks upon the deposits.

If the premise here assumed be correct, it may be that the conclusion contended for would follow. But it is not our understanding of the trust fund doctrine that a bank, having possession of property of an insolvent corporation, acquired after the corporation becomes insolvent, has any greater right to sequester the fund to the satisfaction of an obligation due to it than has the individual creditor of the corporation. The theory of that doctrine is that all of the assets of a corporation, immediately upon the insolvency of the corporation, become a trust fund for the benefit of all of its creditors, and that thereafter no liens or rights can be created, either voluntarily or by operation of law, whereby one creditor is given an advantage over others. Banks, it is true, deal largely with the property of others, and their business is to some extent affected with a public interest. For these reasons, the law has hedged about them certain rights and privileges found necessary for the protection of those in-

terests not granted to individuals. But these rights and privileges do not so far extend as to give to the bank the right to take, for the purpose of satisfying obligations due to it, property which in law is charged with a trust for the satisfaction of obligations due to others. This would violate a fundamental right of property, the right of a person to have his own.

"But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, To whom in equity does it beneficially belong? If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account.

"In the case of *Pennell v. Deffell* (4 De G., M. & G., 372, 388), Lord Justice Turner said: 'It is, I apprehend, an undoubted principle of this court, that as between *cestui que trust* and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust.' In the same case, Lord Justice Knight Bruce said (p. 383): 'When a trustee pays trust money into a bank to his credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust as much and effectually as the money so paid would have done, had it specifically been placed by the trustee in a particular repository and so remained; that is to say, if the specific debt shall be claimed on behalf of the *cestuis que trustent,* it must be deemed specifically theirs, as between the trustee and his executors, and the general creditors after his death on one hand, and the trust on the other.' He added (p. 384): 'This state of things would not, I apprehend, be varied by the circumstance of the bank

holding also for the trustee, or owing also to him, money in every sense his own'." *National Bank v. Insurance Co.*, 104 U. S. 54.

The principle of set-off did not have its origin with the origin of banks, nor is it a principle peculiarly applicable to banks or banking transactions. It has been recognized from the earliest times, and is applicable to all individuals and business concerns whose situation permits of its exercise. We are aware that some courts have applied the principle to banks in instances where it would not be applicable to other business concerns. It has been held, for example, that, if A owes an obligation to a bank and thereafter deposits in the bank in his own name the money of B, the bank may offset the obligation against the deposit if it does not know that the money is the property of B. But such holdings have no foundation in justice or right, and there are well considered cases to the contrary. There are instances, of course, where the bank may make the application. Where, for instance, the bank has been induced by the deposit to continue further dealing with the depositor to its detriment which it otherwise would not have done, or where it has surrendered securities which it would not otherwise have surrendered, it may be allowed to treat the deposit as the depositor's money. But the rule in such cases does not rest on the principle of set-off; it rests on the principle that, where one of two innocent sufferers must bear a loss caused by a third person, the loss is chargeable to the person most blamable. The latter principle, however, has no application here. The bank was not induced to change its position to its detriment by the payments made to it. It has now all the remedies for the collection of its debt it then had. The question then is not, shall the bank suffer a loss, but is rather, shall it be

permitted to make a gain at the expense of other creditors having equal equities.

Of the somewhat numerous cases cited in their briefs, the respondents chiefly rely upon *Conner v. First Nat. Bank,* 113 Wash. 662, 194 Pac. 562, and *Studley v. Boylston Nat. Bank of Boston,* 229 U. S. 523. But we cannot think either of these cases is controlling here. In our own case, the obligations paid were obligations incurred and paid by the debtor to the bank under an express agreement while the debtor was a going concern, and while insolvency, if it existed in fact, was not known, and were made for the express purpose of enabling the creditor to continue its business. There was in fact no preference, and the other creditors of the debtor suffered no loss by the transaction. As was stated in the opinion, the trust fund doctrine was without application, because there was "no preference worked in favor of the bank as against general creditors of" the debtor. There was, it is true, language used in the opinion which, if considered apart from the facts presented, tends to support the respondents' contention here, but we did not mean by the language used that a bank always had the right of set-off regardless of the question whether or not the exercise of the right worked a preference in favor of the bank against other creditors of the debtor. The facts of the case from the supreme court of the United States are too complicated to be epitomized here. An examination of the case, however, will show that the rights of the parties litigant were determined solely under the provisions of the national bankruptcy act. State laws forbidding preferences not forbidden by the bankruptcy act, such as our trust fund doctrine, were not before the court, and were not considered in the opinion.

It is our conclusion, therefore, that the respondent

bank is liable to the trustee in bankruptcy to the amount of the payments.

It is our opinion, also, that judgment should have gone against the respondent Hatfield. At the time he directed these payments to be made to the bank, he knew the corporation was insolvent. He knew, moreover, or at least is chargeable with the knowledge, that the law required the funds of the corporation to be equally distributed among its creditors; yet, in spite of this knowledge, he directed the funds of the corporation to be paid to this one creditor on obligations of the corporation for which he was indorser, and he admits that it was suggested to him by the accountant that he devote the proceeds of the special sale to the payment of these notes. It is true that he denies, with some vehemence, that he had any idea of protecting himself at the expense of the general creditors of the corporation, yet the circumstances are against him. It works out that way, and he must be held responsible for the consequences of his act.

The judgment is reversed, with instructions to enter a judgment in accordance with the prayer of the complaint of the appellant.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.

PEMBERTON, J., dissents.