KOLKMAN v. MANUFACTURERS' TRUST CO.

Circuit Court of Appeals, Second Circuit. July 30, 1928.

No. 294.

1. Bankruptcy ⊜165(3)—Surrender of insolvent corporation's note, in preferential payment of which indorser without notice of dishonor participated, does not make holder purchaser for value (Stock Corporation Law N. Y. § 15).

Where indorser participates in preferential payment of insolvent corporation's note, holder's recourse against him, if payment is subsequently nullified, is not lost by failure to make presentment or give notice of dishonor, so that surrender of note does not make holder a purchaser for value of sum received in payment, within Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 15.

2. Bankruptcy ⊜166(3)—Deposit by bankrupt corporation with intent to give bank setoff held voidable preference, irrespective of bank's innocence (Bankruptcy Act, § 68a [11 USCA § 108a]; Stock Corporation Law N. Y. § 15).

Deposit of money by insolvent corporation with intent to give bank a set-off, under Bankruptcy Act, § 68a (11 USCA § 108a), in order to effect preference, is within prohibition of Corporation Law N. Y. (Consol. Laws, c. 59), § 15, without regard to bank's innocence; money so deposited being held by bank, not as general deposit, but in trust for all of insolvent's creditors.

3. Bankruptcy ⊜154—Preferred creditor of bankrupt may set off provable debts not yet due (Bankruptcy Act, § 68a [11 USCA § 108a]).

The privilege of set-off, conferred on preferred creditor by Bankruptcy Act, § 68a (11 USCA § 108a), is not confined to debts which are due, if they are provable.

4. Bankruptcy ⊜166(2)—Bank could set off so much of bankrupt's deposit exceeding amount of preferential check, as was made without intent to prefer bank (Bankruptcy Act, § 68a [11 USCA § 108a]).

Bank, receiving check in payment of insolvent corporation's notes within five days before filing of petition in bankruptcy, held entitled, under Bankruptcy Act, § 68a (11 USCA § 108a), to set off so much of bankrupt's deposit in excess of amount of check as was deposited without intent to prefer bank.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by John H. Kolkman, trustee in bankruptcy of the Kewa Novelty Company, Inc., against the Manufacturers' Trust Company. From a decree of dismissal (21 F. [2d] 760), plaintiff appeals. Reversed and remanded.

Suit by the trustee in bankruptcy of Kewa Novelty Company, Inc., a New York corporation, to recover the sum of $5,000 paid to the defendant bank by the bankrupt in payment of its two unmatured notes. At the time of payment, which was within five days before the filing of the petition in bankruptcy, the debtor was insolvent, and was known to be so by its officers, who signed its check given in payment. The action is brought under section 67e of the Bankruptcy Act, 11 USCA § 107 (e), on the theory that the payment was nullified by section 15 of the New York Stock Corporation Law (Consol. Laws, c. 59). From a decree dismissing the complaint, and awarding costs to the defendant, the plaintiff has appealed. Reversed.

Shaine & Weinrib and Lhowe & Obstfeld, all of New York City (Geo. C. Levin,

of New York City, of counsel), for appellant.

Jonas & Neuburger, of New York City (Murray L. Jacobs, of New York City, and Leonard G. Bisco, of Brooklyn, N. Y., of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The state statute upon which the plaintiff relies to invalidate the payment reads as follows:

"Sec. 15. * * * No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void. * *. * No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice."

The facts to which this statute must be applied are not in dispute. The defendant bank held two notes, for $2,500 each, made by Kewa Novelty Company, Inc., indorsed by its president and treasurer individually, and maturing, respectively, on December 18 and 29, 1924. On December 10, 1924, these two officers, knowing of the insolvency of their corporation and intending to prefer the bank, drew a check to the order of the bank and delivered it in payment of the corporation's notes. It was received in regular course of business and charged against the bankrupt's deposit account in the bank on the following day, the bank acting throughout in good faith and without knowledge of the financial difficulties of its depositor.

[1] One contention of the defendant, accepted by the District Court as a ground for dismissing the complaint, is that these facts bring the bank within the protection which the statute accords to purchasers for a valuable consideration without notice. It is said that, in accepting payment of the notes and surrendering them to the maker, the bank released the indorsers, thereby becoming a purchaser for value. If it be true that the bank lost recourse against the indorsers, we should agree that it had given value in exchange for the payment, for it cannot be presumed that rights of action against them were worthless, even though they could not have paid the notes in full. But that the law should be such as to make that premise true we cannot believe. These indorsers took part in giving the forbidden preference, and undoubtedly one of their motives, if not their sole one, was to escape personal liability. To hold that, when an indorser wrongfully secures the surrender of the note, he can thus successfully discharge his liability, would be a shocking result. It would validate preferential payments in many cases, since it is common usage for the active officers of a corporation to guarantee its notes by their personal indorsements. If the forbidden payment is set aside, the obligations of all who participated in it should be fully reinstated. No reason has been suggested for discharging the indorsers, except the note-holder's failure to make presentment and give notice of dishonor. But these are requirements which may be waived, and, where the indorser participates in the purported payment with knowledge of its preferential character, there is no longer any need to give him notice for his protection, and no valid reason can be suggested why he should not be deemed to have waived the requirement of presentment and protest. See J. W. O'Bannon Co. v. Curran, 129 App. Div. 90, 113 N. Y. S. 359; Woods v. Metropolitan Nat. Bank, 126 Wash. 346, 218 P. 266; Smith v. Powers, 255 F. 582, 595 (D. C. N. D. N. Y.).

The case of Perry v. Van Norden Trust Co., 192 N. Y. 189, 84 N. E. 804, is not contrary to this view, for there the indorser was not shown to have been a party to the transaction whereby the notes were taken up and protest lost—a fact expressly noted by the court at page 192 (84 N. E.). Decisions may be found which hold that a surety is not discharged by an ineffectual payment of the note, even though he did not participate in the payment. Petty v. Cooke, L. R. 6 Q. B. 790; Pritchard v. Hitchcock, 6 M. & G. 151; Swarts v. Fourth Nat. Bank, 117 F. 1 (C. C. A. 8); Watson v. Poague, 42 Iowa, 582. But with this problem we are not now concerned.

But it is urged that our own decision in Grandison v. Robertson, 231 F. 785, is conclusive that the bank did lose its right of recourse against the indorsers, and so became a purchaser for value. In that case the de-

fendant held a note of a corporate maker with two indorsers, Alexander and Gregory, which was paid with intent to prefer and while the maker was insolvent. Alexander was an officer of the corporate maker and participated in the preferential payment. Gregory was not an officer and so far as appears had no knowledge of the payment. It was held that the trustee in bankruptcy of the maker could not recover the payment, because "the surrender of the note and the possible loss of the security of Alexander's indorsement bring the case in our opinion within the principle announced in Perry v. Van Norden Trust Co., supra."

The decision makes no allusion to the fact that Alexander participated in the preferential payment; there is no suggestion of the question whether such participation constituted a waiver of protest by him. In considering whether he was entitled to presentment of the note and notice of dishonor, Judge Rogers held, first, that the fact that he was an officer of the maker did not excuse notice; second, that the maker's insolvency did not excuse it; and, third, that the fact that Alexander had taken an assignment of accounts to secure his indorsement did not so clearly dispense with presentment and notice under the New York law as to make the principle of the Van Norden Case inapplicable. It was doubt on this last point which led him to refer to "the possible loss of the security" in the passage above quoted. Moreover, the decision makes no allusion to Gregory, except in the sentence: "It seems to be assumed that, while O. L. Gregory was financially irresponsible, O. L. Alexander was sound." Possibly the loss of recourse against Gregory, who did not participate in the payment, is enough, despite his financial irresponsibility, to bring the decision within the Van Norden doctrine. But certainly it was erroneous to assume that Alexander, who made the preferential payment, was within that doctrine, and to fail to note this vital difference in the facts of the two cases.

Since the opinion did not deal with the effect upon the indorser's liability of his participation in the preferential payment, we feel free to give this matter the independent consideration already set out. We hold, as already intimated, that where an indorser participates in a preferential payment of the note, the noteholder's recourse against him, if the payment is subsequently nullified, is not lost by a failure to make presentment and give notice of dishonor, and that consequently the surrender of the note did not make the holder a purchaser for value of the sum received in payment. In the case at bar both indorsers participated, and the bank lost no rights against them in surrendering its notes.

[2] It is further argued that, if the statute nullifies the payment made by check, the $5,000 charged against the account must be regarded as still on deposit at the time of bankruptcy, and the bank must be allowed the right of set-off conferred by section 68a of the Bankruptcy Act, 11 USCA § 108(a). N. Y. County Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380. To this it is replied that the deposit itself was affected with the statutory invalidity. It appears that on December 10, 1924, the same day on which the check to the bank was drawn, the bankrupt deposited $6,000, obtained from a finance company by a pledge of accounts receivable; that on this same date the president and treasurer were advised by their attorney to go into bankruptcy and paid him $400 for prospective services to be rendered in bankruptcy proceedings; and that they also made a preferred payment of $350 to the attorney for past services. Further preferential payments were made by checks dated December 11th, notably one of $3,500 upon an unmatured note for $5,000 held by H. Richter's Sons, which bore the personal indorsement of the bankrupt's officers. The amount of the bankrupt's balance on deposit on December 9th was only $3,517.13. At the close of business on December 11th the balance had been reduced to less than $1,000, and on December 15th, when the petition in bankruptcy was filed, only $209.75 remained. It cannot be doubted that the deposit of $6,000 odd on December 10th was a part of the transaction by which the preferential payments to the bank and other creditors were to be effected. The check to the bank would not have been good without it.

The deposit of money by an insolvent with intent to give the bank a set-off in order to effect a preference would, we think, fall within the prohibitions of section 15. Innocence of the creditor is immaterial; the preferential intent of the debtor plus his insolvency render invalid every transfer of property, payment made, lien created or security given. Cardozo v. Brooklyn Trust Co., 228 F. 333 (C. C. A. 2). Under the inclusive language of the statute, an insolvent debtor may not with intent to prefer his bank deposit money and ask it to exercise a right of set-off. The money so deposited is held by the bank, not as a general deposit, but in trust for all of the insolvent's creditors. Hence the debts are not mutual, and

the privilege of set-off is lacking. See Merrimack Nat. Bank v. Bailey, 289 F. 468, 470 (C. C. A. 1); Elliotte v. Am. Sav. Bank & Trust Co., 18 F.(2d) 460 (C. C. A. 6); Bank of California v. Brainard, 3 F.(2d) 3 (C. C. A. 9). While these cases involve preferences voidable under the Bankruptcy Act (11 USCA), and therefore require knowledge on the part of the creditor, we think the principle equally applicable to a preference made voidable under section 15, without regard to the creditor's innocence.

[3, 4] There was, however, constituting part of the balance from which the check was paid, the sum of $3,517.13, carried over from December 9th, and not shown to have been deposited with any intent to prefer the bank. To this extent the bank would concededly have had the privilege of set-off, provided the bankrupt's notes had been due. See Studley v. Boylston Bank, 229 U. S. 523, 527, 33 S. Ct. 806, 57 L. Ed. 1313. Cf. Fifth Nat. Bank v. Lyttle, 250 F. 361, 366 (C. C. A. 2). It is argued by the bank that the notes were due because of a provision in Defendant's Exhibit B, an agreement which purported to accelerate the maturity of all indebtedness owing to the bank without notice or demand in case the debtor became insolvent. The plaintiff disputes the applicability of this agreement to the notes in question, and contends that in any event such an agreement would be void, as contravening the policy of section 15 and the principle which condemns secret liens, as exemplified in Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, and Matter of Hoey & Co., 19 F.(2d) 764 (C. C. A. 2).

We do not, however, find it necessary to pass upon these contentions. After bankruptcy, the privilege of set-off is not confined to debts which were due, provided they are provable. In re Semmer Glass Co., 135 F. 77 (C. C. A. 2); Remington, Bankruptcy (3d Ed.) § 1455. When the petition in bankruptcy was filed, the bank is to be deemed to hold $5,000, since the payment of the check for that sum was nullified by section 15, on deposit for the bankrupt. Only to the extent necessary to make good the nullified check, can it be said that the deposit was made with intent to prefer the bank. Therefore the bank was entitled to a set-off of $3,517.13. To the extent of $1,482.87 the deposit was made with intent to prefer the bank, and is nullified by the statute. The bank must therefore account for this sum, with interest from December 11, 1924.

The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.