SAMUEL H. LAWRENCE, TRUSTEE OF BANKRUPT ESTATE OF EDWARD A. PATNOD, *vs.* THE CAPITOL NATIONAL BANK AND TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 9th—decided August 1st, 1933.

*W. Arthur Countryman, Jr.,* for the appellant (defendant).

*Frank Covello,* for the appellee (plaintiff).

BANKS, J. From the finding of the court, with such corrections as the appellant is entitled to, the following facts appear: The plaintiff is the trustee of the bankrupt estate of Edward A. Patnod. Patnod had an account with the defendant bank which was opened in February, 1929. On May 16th, 1932, he owed the bank $4237.25, represented by three unsecured notes, one of $2076 due June 1st, 1932, and two of $800 each, due August 1st, 1932, and by a note of $561.25 secured by collateral. On May 16th, he applied to the bank for a further loan of $5000 upon his demand note endorsed by Mary E. McGinn, who, to secure her endorsement, executed an assignment to the bank of her interest, to that amount, in an estate of which she was a beneficiary. The bank agreed to discount this note for Patnod and on May 20th paid him $800 in cash, and issued a cashier's check for the balance of $4200, payable to its own order, account of Edward A. Patnod, which it placed in his credit file at the bank. Between May 20th and May 25th, Patnod repeatedly called upon the bank to obtain the balance of the money realized on the discounted note, or a part of it, but the bank refused to give him any more money. On May 25th, the bank sent him the three unsecured notes marked "paid, May 25, 1932, as of May 20, 1932," and a letter stating that it had discounted the $5000 note for him on May 20th, and containing a statement in which it charged him with $4050, being the amount of the note less a six months' interest charge of $150 and the $800 cash paid him, and credited him with the three unsecured notes aggregating $3676, rebate of interest on the same of $23.61, and a dividend item of $12, and stating that it had applied the balance of $409.61 upon his collateral loan. The bank induced Patnod to procure the discount of this note by leading him to believe that it would pay him the proceeds and

carry him on his other notes, upon his making small payments on them as they fell due, and it fraudulently concealed from him its real intention, which was to secure the note, pay off its unsecured and unmatured notes, and turn over to him what was left. Patnod was hopelessly insolvent at this time, and was adjudged a bankrupt on his own petition on July 25th, 1932.

The court found that this transaction constituted a voidable transfer under § 60 of the National Bankruptcy Act, which provides that any person shall be deemed to have given a preference if, being insolvent, he has, within four months of bankruptcy, made a transfer of any of his property the effect of which will be to enable any one of his creditors to obtain a greater percentage of his debt than other creditors of the same class, and that his trustee may recover the property so transferred or its value from the person receiving it if the latter had reasonable cause to believe that the enforcement of the transfer would effect such preference. It appears to be undisputed that this transaction was within four months of Patnod's bankruptcy, that he was at the time insolvent, and that the effect of the transfer was to give the defendant a preference over other creditors. The defendant contends that the plaintiff failed to establish (1) that it had reasonable cause to believe that Patnod was insolvent at the time of the payment of these notes, with the consequent result that such payment effected a preference, and (2) that the transaction constituted a transfer of Patnod's property to the bank.

The trial court has found that the defendant had actual knowledge that Patnod was hopelessly insolvent at the time that these notes were paid. A careful reading of the evidence, which is certified in support of the assignments of error seeking correction in and additions to the finding, discloses that no corrections

of the finding could justifiably be made which would materially affect this conclusion. The court found that a part of Patnod's indebtedness to the bank dated back to February, 1929, when his dealings with it commenced, that it was continued from time to time by renewal of notes with unpaid interest added to the face of the renewal notes, that the defendant for a long time prior to May 25th, 1932, had attempted to obtain security for the payment of these notes but that Patnod told it he had no further security he could give, that on May 16th, 1932, the defendant procured, as security for the endorsement by Patnod's wife of one of these notes, an assignment of an insurance policy upon his life payable to her, upon which he had borrowed to its full limit; that the balance in Patnod's commercial account at the bank, which in 1929 had averaged $1500, had been at zero since August, 1931; that at the time he applied for the $5000 loan he presented to the president of the bank a list of small bills aggregating $1900, and stated that these creditors were pressing and that he owed several large creditors who were not pressing him. Upon these and other subordinate facts found as to the defendant's dealings with Patnod and knowledge of his affairs, including its action in applying the greater part of the proceeds of the $5000 note to the payment of its own unmatured obligation, the court could reasonably reach the conclusion that it knew, or at least had reasonable grounds to believe, that he was insolvent on the date of this transaction, and that it would result in its receiving a preference over his other creditors.

The remaining contention of the defendant is that this transaction did not constitute a transfer to it of the property of Patnod. It is claimed by the defendant that in legal effect Patnod's notes to the bank were paid by Mrs. McGinn, who endorsed and subse-

quently paid the $5000 note, the proceeds of the discount of which were appropriated by the bank in the payment of the unmatured notes. Reliance is placed upon the rule that the payment of a bankrupt's debt by his surety or endorser, when no property of the bankrupt is transferred to the person making the payment, is not a voidable preference, since there is no transfer of the bankrupt's property to his creditor, but simply a substitution of the surety in his place as creditor. It is apparent that such was not the nature of this transaction. Mrs. McGinn was not an endorser of the notes which were paid out of the proceeds of the $5000 note, and the payment of those notes was not a payment of a debt by one who was secondarily liable for it as surety or endorser within the meaning of the rule relied upon.

The trial court has found that on May 20th, 1932, the bank discounted the $5000 note of which Patnod was the maker, charging him with interest upon it for six months in advance as a discount fee. The defendant attacks this finding only in so far as it relates to the charging to Patnod of the discount fee. The letter sent by the bank to Patnod on May 25th says that it discounted the note on May 20th and then in the statement of account following it charges him with six months interest. It is true that the exhibits in evidence show that the bank on May 20th put to Patnod's credit $800 which was immediately withdrawn by him and issued a cashier's check payable to its own order "Account of Edward A. Patnod" for $4200, which it placed in his credit file. But at some time before it sent the letter to him it discounted the note and thereby created an indebtedness on its part to him, in the amount of the face of the note, $5000, less the six months interest charged; otherwise there would have been no indebtedness by it to him against

which it could set off his indebtedness to it upon the outstanding notes. Whether the interest was charged against the amount of the note on May 20th or later is of no consequence. It is not, and could not well be, contended that Mrs. McGinn had any claim upon the proceeds of the note. She was merely an endorser upon it, not the person to whom the loan was made. The bank, having by the discount of the note created an indebtedness on its part to Patnod, that indebtedness became an asset to which he was entitled and which the bank took out of his estate when it set off his indebtedness to it.

The defendant complains of the refusal of the court to find that when Patnod requested it to discount this note it was understood and agreed that a portion of the proceeds were to be applied on his notes already held by it, but which were not yet due. The court found, on the contrary, that Patnod inquired whether he would be called upon to pay these unmatured notes in the event that the bank discounted the $5000 note, and was informed that if he made some small payment on them, when they fell due, the bank would "play ball with him." The fact that the bank, instead of giving Patnod a check for the proceeds of the discounted note, gave him only $800 in cash, and placed a check for the difference, drawn to its own order, in his credit file, does not alter the fact that he was entitled to the proceeds of the note, and that their application to the payment of the unmatured notes held by the bank constituted a transfer of his property to it which, the other elements of a voidable preference being present, was subject to be set aside at the suit of his trustee in bankruptcy.

It is not claimed by the defendant that, if Patnod was insolvent and it had reasonable ground for believing him to be, it would have a right to set off its debt

to him upon the discounted note against his debt to it upon the notes which were not yet due. See *Fifth National Bank* v. *Lyttle* (C. C. A. 2d) 250 Fed. 361; *Heyman* v. *Third National Bank*, 216 Fed. 685; 2 Collier, Bankruptcy (13th Ed.) pp. 1610, 1614; 7 Corpus Juris, 655.

There was no reversible error in the two rulings on evidence to which exception was taken.

There is no error.

In this opinion the other judges concurred.