## PRATT v. CHEMICAL BANK & TRUST CO. et al.

### No. 316.

Circuit Court of Appeals, Second Circuit.
July 31, 1942.

Addison S. Pratt, of New York City (Frederic P. Rich, of New York City, on the brief), pro se, plaintiff-appellant.

Michael Halperin, of New York City (Wilzin & Halperin, of New York City, on the brief), for defendants-appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Addison S. Pratt, trustee in reorganization proceedings of Jacellen Realty Corporation, appeals from a dismissal of his action against the Chemical Bank & Trust Company and the Continental Bank and Trust Company of New York. Plaintiff's suit is for an allegedly preferential transfer to the banks invalid under § 15 of the New York Stock Corporation Law, or for an

illegal transfer to the banks as stockholders under the same section of the New York law. The district court held as to the preferences that insolvency was not proved, and as to the transfer to stockholders that there had been no refusal to pay obligations. Though we agree with the conclusions reached, we approach some of the questions a little differently.

Jacellen Realty Corporation owned and operated an apartment house in New York. This was subject to a first mortgage given to the Prudence Company, Inc., and a second mortgage held by the Designee Corporation. In 1934, Designee offered to accept approximately $55,000 in satisfaction of its mortgage. In order to consummate the deal, Jacellen borrowed $54,000 from the defendant banks, one of which already carried a loan of $44,500 made to Jacellen by a predecessor in interest.

The banks were willing to lend the money, but only on a basis of full security. They were not willing to take an assignment of rents, and instead an involved arrangement was worked out which achieved the same end without an actual assignment. This arrangement provided for collection of rents by an agent agreed upon by Jacellen and the banks, and their deposit in accounts in the banks, where they were at once to become liens. Further, the banks were to name two of the four directors of Jacellen, and the common stock of the debtor was transferred to nominees of the banks. In return for this the banks lent the money on collateral demand notes containing the usual provision giving the banks liens on all cash on deposit.

From 1934 on, the procedure was for the accounts to be built up in order to pay interest and taxes due in April and October of each year. Up to October, 1937, the banks always released the accounts even though only small payments had been made on the notes. In that year, however, the unpaid principal of the first mortgage became due. It is not clear whether or not this fact motivated the banks' action; and it is not essential. The fact is that about October 1, 1937, which was the due date of the mortgage, the banks decided not to release the deposits. On October 19, each applied its deposit account to the unpaid balance of the debt owed to it. Subsequently, on January 6, 1938, Jacellen filed a petition for reorganization under the then § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which was approved and followed by an approved plan. Jacellen's trustee seeks only to recover the asserted set-offs of $17,332.26 for Chemical and $27,327.41 for Continental.

We consider first the question of the set-off as a preferential transfer under § 15 of the New York Stock Corporation Law. This provides that no "transfer of any property * * * nor any payment made, judgment suffered, lien created or security given * * * when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid." And the transferee is bound to account therefor to the corporation's creditors, stockholders, "or other trustees"—as, indeed, he would be required to do under Bankruptcy Act, § 70, sub. e, 11 U.S.C.A. § 110, sub. e. The district court stated that four elements had to be established by the trustee—(1) existence or imminence of insolvency at the time of payment; (2) a preference in result; (3) notice or reasonable cause to believe; (4) intent to prefer. Irving Trust Co. v. Chase National Bank, 2 Cir., 72 F.2d 668. Neither the first nor the fourth element was found by the district court to be present. We shall not pause to consider insolvency, for we think it is amply shown that there was no intent to prefer, or, put another way, we think the transfers can be upheld as bankers' liens entitled to set-off.

We have consistently held that the usual banker's lien rule—i e., that a bank gets no preference when it sets off a debt against a deposit not specifically built up for the purpose—applies when construing the second sentence of § 15. Matters v. Manufacturers' Trust Co., 2 Cir., 54 F.2d 1010; Kolkman v. Manufacturers' Trust Co., 2 Cir., 27 F.2d 659; and see Van Schaick v. Title Guarantee & Trust Co., 252 App.Div. 188, 297 N.Y.S. 827. It is obvious that the rents deposited prior to October 18 were not specifically for the purpose of effecting a preference to the banks. The only way an intended preference can be worked out is to rely on the original agreement entered into in 1934. But it is not possible to sustain an intent through the vicissitudes of three years' of business dealings. The debtor knew that its accounts might be debited at any moment. This is not the same as saying that money was deposited so that it would be debited. In fact, failure to deposit rents

or a decrease in their amount was more likely to produce a calling of the loan than regular deposits. Hence we conclude that there was no intent to prefer, and that the set-off was not invalid under § 15.

The trustee also asserts that the banks were stockholders of Jacellen, and that under the first sentence of § 15 the transfer is invalid. This provision says that "no corporation which shall have refused to pay any of its notes or other obligations, when due, * * * shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt." The facts on which a showing of stockholder relationship is based are these: In 1932, one Campbell was indebted to the banks and as part of a trust agreement he assigned to the banks 300 shares of Jacellen with power to apply on the debts any money received. Campbell died insolvent, and the stock was transferred on the books of Jacellen to C. A. England & Co. as nominee for Chemical as trustee. The remaining shares of common stock were transferred in 1934 to C. A. England & Co. Thus on October 19, 1937, all the common stock, except for shares held by the directors, was in the hands of nominees of the bank.

We have been cited to no case, and have found none, which says that this sentence covers creditors seeking security by tying up the voting stock of a corporation. In view of the general purpose of the provision—to prevent officers, directors, and stockholders from denuding their corporation just before abandoning it to creditors—we hardly think the banks should be included as stockholders. They were not real owners of Jacellen, and presumably had no desire to become owners. Even as to the 300 shares held absolutely and not just to exercise voting power, as with the remaining shares, the trustee had a duty to return the shares to Campbell's estate if the debts secured were paid off. We think that the banks were primarily creditors of Jacellen; to call them stockholders would destroy a security device which the statute really was not designed to hit. If this transaction had actually been illegal, the second sentence would have caught it. Having failed on that score, the trustee cannot distort the concept of stockholders so as to slip under the first sentence.

In this view, we need not pass on the finding of the district court that there was no "refusal" to pay an obligation when due. We may note, however, that there is much to be said for the argument that because of the statutory mortgage moratorium there was no refusal to pay principal, and that custom had sanctioned the payment of interest any time up to the twentieth of the month, or within the grace period provided by the first mortgage.

Affirmed.